T.C. Memo. 2007-305

UNITED STATES TAX COURT

UNIVERSAL MARKETING, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8744-02.                    Filed October 9, 2007.

Daniel L. Reeves (officer), for petitioner.

<u>Wesley F. McNamara</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal corporate income tax of $170,674 for the
fiscal year ending (FYE) May 31, 1996.

The issues for decision are:  (1) Whether the amounts paid
to petitioner's sole executive and shareholder constituted
reasonable compensation pursuant to section 162(a)(1); and

(2) whether petitioner is entitled to deduct $80,000 as an expenditure for supplies pursuant to section 162(a), or if required to capitalize the expenses, whether petitioner is entitled to depreciate the $80,000 expenditure over a 7-year recovery period under section 168(c).[1]

## FINDINGS OF FACT

At the time the petition was filed, petitioner maintained its business office in Wilsonville, Oregon.[2]

A.    Background

Petitioner's predecessor, Vitamin Village, Inc. (VVI), was incorporated by Daniel L. Reeves (Mr. Reeves) in the State of Oregon in 1979.  VVI, an accrual basis taxpayer with an FYE June 30, was in the business of producing, distributing, and selling skin care products, tanning lotions, diet aids, sports performance products, nutritional supplements, health food products, and apparel at both the retail and wholesale levels. VVI also provided indoor tanning salon services and its own printing, advertising, and marketing services.  VVI used the business name of Vitamin Village for the production and sales of nutritional supplements, health food, skin care products, and

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended.  All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  Amounts are rounded to the nearest dollar.

[2] The parties did not file a stipulation of facts.

tanning lotions; Club Tan for its tanning salon services; and Universal Graphics for its advertising, marketing, and printing activities.

B.   Incorporation of Petitioner

On June 1, 1995, VVI incorporated petitioner and elected an FYE May 31.  On June 1, 1995, VVI also transferred $487 in cash along with the printing equipment used by Universal Graphics, an automobile, and fixtures with a total fair market value of $53,555 in exchange for all issued shares of petitioner's stock. The shares of stock were transferred to Mr. Reeves in a section 355 reorganization resulting in VVI and petitioner becoming brother-sister corporations.[3]

Mr. Reeves was petitioner's president, secretary, treasurer, sole shareholder, and sole manager.

C.   Petitioner's Services

In June 1995, at the beginning of petitioner's FYE May 31, 1996, VVI entered into an agreement with petitioner, in which petitioner agreed to brand, market, and advertise skin care and tanning products sold by VVI for $1 million.  Petitioner's only other customer was its sister corporation Club Tan Centers of Oregon, Inc., of which Mr. Reeves was the sole owner and

---

[3] Additionally, in December 1994 VVI incorporated Club Tan Centers of Oregon, Inc. (CTC), transferred the assets used by Club Tan to CTC in exchange for all issued shares of CTC's stock, and the shares of stock were transferred to Mr. Reeves in a sec. 355 reorganization.

shareholder. Petitioner provided minimal services for CTC in FYE May 31, 1996.

During FYE May 31, 1996, petitioner provided the following marketing and advertising services for VVI: Photographed models and VVI products, sponsored pro and semipro athletes, sponsored various sporting events,[4] negotiated with retail stores and distributors to sell VVI's products, including developing and distributing advertising displays and posters to these stores, and promoted VVI's traveling trade shows.

D. Petitioner's Financial Condition and Employee Compensation

On its Form 1120, U.S. Corporation Income Tax Return, for FYE May 31, 1996, petitioner reported gross receipts of $1,055,433, with total income of $1,143,468.[5] After petitioner deducted a $500,000 bonus and a $9,000 salary as executive compensation to Mr. Reeves, $31,757 as salary and wages to its employees, $113,369 for a supplies business expense, and $426,963 in various other deductions, petitioner's taxable income was $62,379 with a total tax of $21,209[6] and a net income book value

---

[4] Sporting events included volleyball and waterskiing competitions.

[5] Total income included gross rents of $67,347 and gross royalties of $20,688.

[6] The total tax due included an estimated tax penalty of $1,029.

of $38,886.[7]  One component of the $113,369 expense for supplies was evidenced by a check for $80,000 that was made payable to VVI.  The $80,000 check was signed by Mr. Reeves and bore the notation "asset purchase UG".[8]

Petitioner's rate of return on equity was 42 percent for FYE May 31, 1996.[9]  Petitioner did not pay any dividends in FYE May 31, 1996.

Petitioner did not maintain a compensation policy for Mr. Reeves or its employees.  The bonus Mr. Reeves received was not based upon a formula or previously set forth in writing.  Each bonus was determined and paid at the end of the fiscal year when petitioner could ascertain its cash available.

---

[7] Respondent disallowed all but $100,000 of the $509,000 deduction petitioner claimed for officer's compensation paid to Mr. Reeves.

Net income book value was reported on petitioner's Form 1120 Schedule M-1.  Net income book value was computed by subtracting from taxable income of $62,379, $21,209 of Federal income tax and $2,284 comprising Federal and State underpayment penalties, accrued related party compensation, and a travel and entertainment expense recorded on the books but not deducted on the return.

[8] Respondent disallowed the $80,000 expense deduction but allowed petitioner to depreciate the $80,000 over a 39-year recovery period under the modified accelerated cost recovery system.  The allowed depreciation deduction was $2,051.

[9] Rate of return on equity is computed by dividing petitioner's net income book value of $38,886 by its equity value of $92,928.

Respondent issued the notice of deficiency on March 8, 2002. Petitioner timely filed its petition on May 13, 2002, and filed an amended petition on August 19, 2002.

OPINION

I.   Reasonable Compensation

Petitioner contends the $509,000 paid to Mr. Reeves constituted reasonable compensation under section 162(a)(1) during its FYE May 31, 1996.

Respondent contends petitioner is entitled to deduct only $100,000 as compensation under section 162(a)(1) with the remaining $409,000 constituting a nondeductible dividend.

Section 162(a)(1) permits a taxpayer to deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered".  A taxpayer is entitled to a deduction for compensation only if the payments were reasonable in amount and in fact paid purely for services.  Sec. 1.162-7(a), Income Tax Regs.[10]  Although framed as a two-prong test, the inquiry under section 162(a)(1) generally turns on whether the amounts of the purported compensation payments were reasonable. Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1245 (9th Cir. 1983), revg. T.C. Memo. 1980-282.

---

[10] Respondent argues only that the amount of compensation was unreasonable.

Because petitioner's place of business is in the State of Oregon, absent stipulation otherwise, an appeal of this case would go to the Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(B). The Court of Appeals uses five factors to determine the reasonableness of compensation, with no single factor being determinative. Elliotts, Inc. v. Commissioner, supra. The factors are: (1) The employee's role in the company; (2) comparison of the compensation with that of similar companies, (3) the character and condition of the company, (4) potential conflicts of interest, and (5) internal consistency in compensation. Id. at 1245-1248. Where shareholder-officers who control the corporation set their own compensation, careful scrutiny is necessary to determine whether the alleged compensation is in fact a distribution of profits and a constructive dividend. Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1156 (1980). Petitioner bears the burden of proving the payments to Mr. Reeves were reasonable.[11] See Rule 142(a).

---

[11] Petitioner does not argue that sec. 7491(a) operates to shift the burden of proof to respondent. Even if petitioner had so argued, the burden of proof would not shift under sec. 7491(a) because petitioner has not shown it maintained all required records, nor has it shown it cooperated with the reasonable requests of respondent for witnesses, documents, or meetings.

II.  The Elliott Factors Applied to Petitioner's Compensation of Mr. Reeves

A.  Role in the Company

This factor focuses on the employee's importance to the success of the business.  Pertinent considerations include the employee's position, hours worked, and duties performed. Elliotts, Inc. v. Commissioner, supra at 1245.

Mr. Reeves served as petitioner's president, secretary, and treasurer and handled all petitioner's managerial duties. However, the record does not establish the specific amount of time Mr. Reeves spent operating petitioner after it was incorporated.  Instead, the record indicates that Mr. Reeves spent a considerable amount of his time operating petitioner's sister corporation, VVI.

B.  External Comparison

This factor compares the employee's compensation with that paid by similar companies for similar services.  Elliotts, Inc. v. Commissioner, supra at 1246; see sec. 1.162-7(b)(3), Income Tax Regs.

Petitioner failed to provide any data comparing the compensation paid to Mr. Reeves with that paid by similar companies providing similar services.  Only respondent offered expert testimony.  However, respondent's expert, Scott D. Hakala, provided a reasonable compensation analysis focusing only on

companies dealing with the development and sales of nutritional products and not on companies that provided branding, marketing, and advertising services.[12]

C.   Character and Condition of the Company

This factor requires the Court to focus on petitioner's size as measured by its sales, net income, or capital value; the complexities of the business; and general economic conditions. Elliotts, Inc. v. Commissioner, supra at 1246.

Petitioner was incorporated in FYE May 31, 1996, with only $487 in cash, and used equipment, including an automobile, with a total fair market value of $53,555.  Although petitioner generated total gross receipts of $1,055,433, petitioner's net income was only $38,886 in its initial year of operation.  All but $55,433 of its gross receipts were generated from one customer, its sister corporation VVI.  Petitioner had a small staff and paid wages of $31,757 to its employees.  Therefore, petitioner was a relatively small company whose operations were not particularly extensive or complex.

D.   Conflict of Interest

This factor examines whether a relationship exists between the company and the employee which may permit the company to disguise nondeductible corporate distributions as section

---

[12] See Vitamin Vill., Inc. v. Commissioner, T.C. Memo. 2007-272, for an analysis of Mr. Hakala's report.

162(a)(1) compensation payments. Close scrutiny may be used when the paying corporation is controlled by the compensated employee, as in the instant case. Elliotts, Inc. v. Commissioner, 716 F.2d at 1246-1247. However, the mere fact that the individual whose compensation is under scrutiny is the sole shareholder of the company, even when coupled with an absence of dividend payments, does not necessarily lead to the conclusion that the amount of compensation is unreasonably high. Id.

The Court of Appeals for the Ninth Circuit determined that the reasonableness of compensation should be evaluated from the perspective of a hypothetical independent investor. The prime indicator is the return on the investor's equity. Id. at 1247. If the company's earnings on equity after payment of the questioned compensation remain at a level that would satisfy a hypothetical independent investor, there is a strong indication that the employee is providing compensable services and that profits are not being siphoned out of the company disguised as salary. Id. The Court of Appeals in Elliotts calculated the return on equity using the yearend shareholders equity. Id. This Court follows that approach. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); Lumber City Corp. v. Commissioner, T.C. Memo. 1996-171.

Petitioner had a 42-percent return on equity after dividing the net income book value by the yearend shareholders equity. In

<u>Elliotts</u>, the Court of Appeals found that a 20-percent average rate of return on equity would satisfy a hypothetical independent investor. <u>Elliotts, Inc. v. Commissioner</u>, <u>supra</u> at 1247. However, because petitioner was thinly capitalized with $487 in cash, and used equipment with a total fair market value of $53,555, this factor is given little weight.

> E.    <u>Internal Consistency in Compensation</u>

This factor focuses on whether the compensation in question was paid pursuant to a structured, formal, and consistently applied program. <u>Id.</u> Bonuses not paid pursuant to such a program are suspect. <u>Id.</u> Bonuses paid to employees are deductible "when * * * made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered." Sec. 1.162-9, Income Tax Regs.

Petitioner did not maintain a compensation policy for its officers and employees, and Mr. Reeves's bonus of $500,000 was not awarded under a structured, formal, or consistently applied program. Rather, the bonus was determined and paid at the end of the fiscal year when petitioner could ascertain its cash available.

F.  Conclusion

Petitioner has failed to meet its burden of proving that the $509,000 payment to Mr. Reeves constituted reasonable compensation.  Therefore, the Court finds that the payment of $100,000 in petitioner's FYE May 31, 1996, as allowed by respondent, is deductible under section 162(a)(1).[13]

III. Petitioner's $80,000 Expense Deduction

Under section 162(a), a taxpayer may deduct ordinary and necessary business expenses incurred or paid during the taxable year.  Generally, a taxpayer carrying materials and supplies on hand is allowed to deduct expenditures for them only in the amount that they are actually consumed and used in operation during the taxable year.[14]  Sec. 1.162-3, Income Tax Regs. However, the cost of acquiring property having a useful life beyond a taxable year is a nondeductible capital expenditure, except as otherwise provided in chapter 1 of the Code.[15] Prudential Overall Supply v. Commissioner, T.C. Memo. 2002-103;

---

[13] Conversely, the Court finds $409,000 of the $509,000 claimed as a deduction for FYE May 31, 1996, to be nondeductible.

[14] Sec. 1.162-3, Income Tax Regs., also allows costs of incidental materials and supplies to be deducted when purchased if inventories and records of consumption are not kept and taxable income is clearly reflected.

[15] For instance, sec. 167(a) provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business.

secs. 1.263(a)-1 and 1.263(a)-2(a), Income Tax Regs. The taxpayer is required to maintain records sufficient to enable the Commissioner to determine his correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. The taxpayer has the burden to prove the Commissioner's determination was in error.[16] Rule 142(a).

At trial, petitioner produced a check payable to VVI for $80,000, dated October 3 or 5, 1995, bearing the notation "asset purchase UG".[17] Mr. Reeves testified that the $80,000 expenditure was initially recorded in petitioner's books as an "equipment purchase" and was most likely paid to purchase darkroom equipment, plates, small hand tools, paper, and ink. On brief, petitioner indicated that the expenditure was most likely for "miscellaneous equipment that would have gone hand-in-hand with the printing equipment".

Although small hand tools, paper, and ink could fit the description of incidental materials and supplies the costs of which may be deducted currently under section 162, petitioner

---

[16] Petitioner does not argue that sec. 7491(a) operates to shift the burden of proof to respondent. Even if petitioner had so argued, the burden of proof would not shift under sec. 7491(a) because petitioner has not shown it maintained all required records, nor has it shown it cooperated with the reasonable requests of respondent for witnesses, documents, or meetings.

[17] UG was the acronym for Universal Graphics. Universal Graphics was the business name for VVI's printing, advertising, and marketing services before petitioner's sec. 355 reorganization.

failed to produce evidence allocating any portion of the $80,000 to such incidental items so as to allow them to be deducted. See sec. 1.162-3, Income Tax Regs.[18] Therefore, the Court finds petitioner is not entitled to deduct any of the $80,000 as an ordinary and necessary business expense under section 162(a).

In the alternative, petitioner contends the $80,000 was used to purchase property which is depreciable over a 7-year recovery period under the modified accelerated cost recovery system (MACRS). Respondent does not dispute that the property is depreciable under section 167(a) but contends that the $80,000 was used to purchase property with a 39-year recovery period under the MACRS.[19]

Section 167(a) generally allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, tear, and obsolescence of property used in a trade or business. MACRS provides that the depreciation deduction provided by section 167(a) for any tangible property must be determined by using the applicable depreciation method, the applicable recovery period,

_____

[18] "Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year." Sec. 1.162-3, Income Tax Regs. In contrast, the cost of acquiring "equipment * * * and similar property having a useful life substantially beyond a taxable year" is a capital expenditure. Sec. 1.263(a)-2(a), Income Tax Regs.

[19] Respondent did not delineate what type of property petitioner may have purchased with the $80,000.

and the applicable convention.  Sec. 168(a); <u>Hospital Corp. of</u>
<u>Am. v. Commissioner</u>, 109 T.C. 21, 45 (1997).  Only the applicable
recovery period is at issue.

Property with 39-year recovery period is nonresidential real
property.[20]  Sec. 168(c).  Nonresidential real property is
defined as "section 1250 property which is not-- (i) residential
rental property, or (ii) property with a class life of less than
27.5 years."  Sec. 168(e)(2)(B).  Section 1250 property is any
real property (other than section 1245 property, as defined in
section 1245(a)(3)) which is or has been subject to the
depreciation allowance under section 167.  Sec. 1250(c).  Real
property, as used in section 1250(c), includes land, improvements
thereto, including a building or its structural components, and
other real property except that which is defined in section
1245(a)(3)(B)-(F).  Sec. 1.1250-1(e)(3)(i), Income Tax Regs.

Respondent concedes petitioner used the $80,000 to purchase
an asset and "petitioner's records included documentation, at
least at one time, indicating that the check was, in fact, paid
to purchase equipment".  Mr. Reeves credibly testified that the

---

[20] MACRS generally classifies eligible personal property and
certain real property as 3-year property, 5-year property, 7-year
property, 10-year property, 15-year property, or 20-year property
and assigns that property to a corresponding recovery period on
the basis of the property's class life.  Sec. 168(c), (e)(1),
(3).  MACRS generally classifies real property as residential
rental property or nonresidential real property, assigning
recovery periods of 27.5 years and 39 years, respectively.  Sec.
168(c), (e)(2).

$80,000 expenditure was initially recorded in petitioner's books as an equipment purchase and was likely used to purchase equipment associated with printing.

The record indicates that the property purchased with the $80,000 did not consist of nonresidential real property, i.e. section 1250 property which is not residential rental property, or property with a class life of less than 27.5 years. Therefore, this Court finds petitioner is not required to depreciate the $80,000 over a 39-year recovery period pursuant to section 168(c).

Petitioner did not produce evidence indicating the equipment had a class life of less than 10 years, which would allow petitioner to recover the $80,000 over a 5-year period.[21] See sec. 168(e)(3)(B); Rev. Proc. 87-56, 1987-2 C.B. 674, as clarified and modified by Rev. Proc. 88-22, 1988-1 C.B. 785. Moreover, none of the property petitioner asserted it had purchased with the $80,000 had a class life of 16 years or more with an applicable recovery period greater than 10 years. See sec. 168(c), (e)(1), (3)(D); Rev. Proc. 87-56, supra.

However, petitioner did produce evidence indicating the $80,000 was used to purchase printing equipment which has a class life of 11 years. See Rev. Proc. 87-56, 1987-2 C.B. at 679

---

[21] Property with a class life of greater than 4 but less than 10 years is treated as 5-year property, which has a 5-year recovery period. Sec. 168(c), (e)(1), (3)(B).

(asset class 27.0).  Therefore, the Court finds that the equipment petitioner purchased with the $80,000 was 7-year property with a 7-year recovery period.  See sec. 168(c), (e)(1); Thomson v. Commissioner, T.C. Memo. 1999-371.

The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.