*946 OPINION

Per Curiam:

In May of 1960, the respondents (the “Owners”) entered into a lease with the Travel Lodge Corporation for a parcel of land, now commonly referred to as the Las Vegas Mobile Home Park. The duration of the lease was forty-nine years. In 1972, the Travel Lodge Corporation assigned its interest in the lease to Richard G. Worthen, who has operated the Las Vegas Mobile Home Park since that time.
In 1962, the Owners entered into an identical lease with the Trailer Rancho Corporation for another parcel of land known as the Treasure Lodge Mobile Home Park. This second lease was also to last for forty-nine years. This lease was subsequently transferred to Joseph Musser and Margaret Loveless, who have operated the mobile home park since the transfer of the lease.
In 1996, McCarran International Airport condemned the entirety of both parcels in order to extend two airport runways.[1] Clark County brought a condemnation action against the Owners. All parties stipulated to immediate occupancy by the county on the condition that the county place a deposit with the Clerk of the Court pursuant to NRS 37.100(4).
A controversy and lawsuit immediately arose between the Owners and the Worthen, Loveless and Musser parties (collectively, the “Lessees”) regarding apportionment of the condemnation award. Each party filed motions and counter-motions for summary judgment. The Lessees argued that under the terms of the leases, they were entitled to a portion of the condemnation award. The Owners maintained that the leases provided that they were entitled to the entire condemnation award.
The district court concluded that the condemnation clause *947 included in the leases provided that the entire condemnation award should be paid to the Owners and, accordingly, granted the Owners’ motion for summary judgment. The Lessees appeal that decision.
“The question of the interpretation of a contract when the facts are not in dispute is a question of law.’ ’ Grand Hotel Gift Shop v. Granite St. Ins., 108 Nev. 811, 815, 839 P.2d 599, 602 (1992). We, therefore, review the district court’s findings de novcf as a question of law. Id. This court is obligated to make its own independent determinations and should not defer to those of the district court. Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990).
In Davis v. Nevada National Bank, 103 Nev. 220, 737 P.2d 503 (1987) this court stated:
[Established doctrines of contractual interpretation [dictate that]: (1) the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself; and (2) ambiguities are to be construed against the party . . . who drafted the agreement or selected the language used.
Id. at 223, 787 P.2d at 505 (citations omitted).
The dispute over whether the Lessees are entitled to a portion of the condemnation award turns primarily on sections [1] and [2] of the parties’ leases. The leases between the parties provided in pertinent part:
[1] If the whole of the premises should be taken under the power of eminent domain, the lease term shall cease as of the date of taking. If such portion of the premises be taken that the balance is thereby in the bona fide judgment of the Lessee rendered unsuitable for the Lessee’s purposes, Lessee may, at its option, upon thirty days notice to Lessor, terminate this lease, if the Lessee’s notice is given within 150 days of the date of taking.
[2] Damages awarded either for a taking of the whole of the premises or part of the premises, Lessee electing to exercise its option to terminate, shall be paid as follows:
(i) first any mortgage or other valid encumbrance, which is a lien against the premises shall be paid,
(ii) then, Lessor shall receive any part of the award then remaining attributable to the land, (reduced by any mortgage or other valid encumbrance which is a lien on the premises not required to be paid by Lessee under this lease),
(iii) then, Lessee shall receive any portion of the award *948 then remaining attributable to a diminution in the value of its leasehold interest and
(iv) then Lessee and Lessor shall apportion between them any part of the award then remaining attributable to the improvements. Lessees receiving the portion of such award that the unexpired term of the lease bears to the entire term of the lease and Lessor receiving the balance.
[3] If less than all of the premises are taken under the power of eminent domain and Lessee does not elect to exercise its option to terminate, the fixed minimum rent shall be equitably and proportionately abated from the date of taking. Any damages awarded shall be paid in the manners set forth in the preceding paragraph, except that item (1) shall be amended to read as follows: any mortgage or other valid encumbrance which is a lien on the premises, shall be paid in proportion to the impairment of the respective security interests as determined by Lessor, Lessee and such mortgage or lien claimant, or by the court if agreement cannot be reached.
The first issue we address is whether the first sentence under paragraph [1] operates as a termination clause precluding the Lessees from receiving any portion of the condemnation proceeds.
The Owners cite several cases which hold that the presence of an automatic termination provision in a lease constitutes a waiver of the Lessee’s right to condemnation proceeds. See, e.g., United States v. Improved Premises Known as No. 46070, Mc.Lean Ave, 54 F. Supp 469 (N.Y. 1944); United States v. Advertising Checking Bureau, Inc., 204 F.2d 770 (7th Cir. 1953); United States v. 96,900 Sq. Ft., 65 F. Supp 833 (N.Y. 1946); Fiberglass Fabricators v. Kyleberg, 799 P.2d 371 (Co. 1990); City of Honolulu v. Market Place, Ltd., 517 P.2d 7 (Haw. 1973); Waesch v. Redevelopment Agency of New London, 229 A.2d 352 (Conn. 1967); In Re Site, 95 N.W. 112 (Minn. 1959). These cases do, in fact, stand for the proposition that an automatic termination clause forecloses a lessee’s right to a portion of a just compensation award. They are distinguishable from the instant case, however, in that while the present leases contain a clause to the effect that the leases will terminate upon total condemnation, they also include language dictating how any compensation award should be allocated between the Owners and Lessees in such an event. In the above cited cases, the relevant leases contained termination clauses but either expressly denied the lessee a right to apportionment, or were silent regarding how compensation awards should be divided among lessor and lessee in the event of condemnation.
*949 A termination clause in a lease without accompanying language regarding how any compensation award is to be allocated, is sufficient to bar a lessee’s claim to part of the award. Pennsylvania Ave. Development Corp. v. One Parcel of Land, 670 F.2d 289 (D.C. Cir. 1981).[2]
If there exists a prior agreement between a landlord and tenant as to allocation of condemnation proceeds, that agreement governs the disposition of those proceeds. Pennsylvania, 670 F.2d at 292; City of Honolulu, 517 P.2d at 15. The leases in this case provide that in the event of a total condemnation, or if the Lessees, in good faith, elect to terminate the leases in the event of a partial condemnation, the Lessees are entitled to a portion of the award. Paragraph [2] provides that in either of these events, the condemnation award should be distributed as follows: first, towards paying any outstanding liens or encumbrances; second, to the Lessor for any value “attributable to the land,” and; third, to the Lessees for the value “attributable to a diminution in the value of its leasehold interest;” and fourth, apportioned between the Lessor and Lessee for any remaining amount attributable to improvements.
If the termination clause operates to automatically extinguish the Lessees’ right to any portion of the condemnation award in the event of total condemnation, as the Owners claim, then the words “a taking of the whole part of the premises” of paragraph [2] are meaningless. A basic rule of contract interpretation is that “[e]very word must be given effect if at all possible.” Royal Indem. Co. v. Special Serv., 82 Nev. 148, 150, 413 P.2d 500, 502 (1966). “A court should not interpret a contract so as to make meaningless its provisions.” Phillips v. Mercer, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978). Therefore, the clause setting forth the distribution of damages in the event of total condemnation must be given effect. The termination clause still has meaning in that it protects the Owners from liability to the Lessees after the condemnation. See Pennsylvania Ave. Development, 670 F.2d at 289; City of Honolulu, 517 P.2d at 15.
*950 The Owners also allege that because the appraisers indicate that the improvements were essentially valueless for these purposes, the allocation clauses of the leases (paragraph [2] sections i, ii, iii and iv) apportion the entire condemnation award to the Owners on the basis that the entire condemnation award is attributable to the land” as provided in section [2](ii) of the lease; therefore, there is nothing left for allocation under sections [2](iii) and (iv). We disagree.
If we were to accept the Owners’ interpretation that the allocation clauses apportion the entire condemnation award to them, section (ii) would always dispose of the entire award attributable to the land and section (iv) would always dispose of the portions of the award attributable to improvements. As a result, these two provisions would dispose of the entire condemnation award. No portion of the award would ever be distributed in accordance with section (iii). Section [2](iii) would be meaningless, regardless of whether the condemnation was total or partial, or whether the lease was terminated or continued. This interpretation contradicts the principle discussed above, that contracts should be construed so as to avoid rendering portions of them superfluous. Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1144 n. 9 (Ariz. 1993); Phillips v. Mercer, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978). Had the original parties intended section (iii) to have no effect, they would not have included such a provision in the leases. The failure of the Lessees to pay rent is irrelevant on the issue of whether the allocation clause in the Lease is effective.
The Owners also contend that the Lessees have remedies under NRS 342 which provide a comprehensive statutory scheme for compensating businesses displaced by a condemnation. Cann v. Williams Land & Livestock Co., 56 Nev. 242, 252, 48 P.2d 887, 890 (1935). Whether the Lessees are entitled to some remedy under NRS 342 is irrelevant since Chapter 342 is not an exclusive remedy. Here the parties have provided for allocation of condemnation proceeds.
In conclusion, we hold that the Lessees are entitled to apportionment of the condemnation award under the terms of the allocation clause of the lease between the Lessees and Owners.
Accordingly, we reverse the order granting summary judgment and remand for proceedings consistent with this opinion.

 The runway extension will cause these properties to be exposed to noise levels exceeding FAA regulations.

Some courts, however, have looked unfavorably on clauses causing the forfeiture of the lessee’s entire interest on condemnation and, where possible, have construed such provisions to avoid this harsh effect. Pennsylvania Ave. Development Corp. v. One Parcel of Land, 670 F.2d 289, 292 (D.C. Cir. 1981); Belmont Clothes, Inc. v. Pleet, 184 A.2d 731 (1963); 27 Am. Jur. 2d Eminent Domain § 250 (1996); 2 Julius Sackman, Nichols On Eminent Domain § 5.23[2] (1997).