*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2018 UT 54**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH DEPARTMENT OF TRANSPORTATION,
*Appellant and Cross Appellee,*

*v.*

KMART CORPORATION,
*Appellee and Cross Appellant.*

No. 20160653
Filed September 25, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Keith A. Kelly
No. 100907779

Attorneys:

Sean D. Reyes, Att'y Gen., James R. Soper, Barbara E. Ochoa,
Asst. Att'ys Gen., Erin T. Middleton, Asst. Solic. Gen., Salt Lake City,
for appellant

Perrin R. Love, Shannon Zollinger, Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PETERSEN, JUDGE MORTENSEN,
and JUDGE HAGAN joined.

Having recused themselves, JUSTICE HIMONAS and
JUSTICE PEARCE did not participate herein. COURT OF APPEALS
JUDGE DAVID N. MORTENSEN and COURT OF APPEALS
JUDGE DIANA HAGAN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1   This eminent domain case is before us on appeal for the second time. The first appeal (*Utah Department of Transportation v. FPA West Point, LLC*[1]) addressed valuation methods in the context of a condemnation award determination. In that case, we held that courts must use the aggregate-of-interests approach—which determines the value of properties with divided ownership interests by assessing the value of each property interest separately—in deciding the amount of a condemnation award. In this appeal we must decide whether the district court erred by granting a condemnation award to Kmart—a lessee—even though Kmart's lease contained a clause terminating its leasehold interest in the event of a condemnation. We hold that it did. Because the termination clause extinguished all of Kmart's compensable property interests, Kmart was not entitled to compensation. Accordingly, we reverse the district court's grant of a condemnation award to Kmart.

**Background**

¶2   In 2010 the Utah Department of Transportation (UDOT) condemned an access point from Bangerter Highway to the West Point Shopping Center. At the time of the condemnation, the shopping center was owned by FPA West Point, LLC. FPA leased buildings in the shopping center to a number of businesses, including K MART Corporation (Kmart). Both FPA and Kmart entered the condemnation proceedings, asserting rights to just compensation under Utah Code section 78B-6-508.

¶3   Despite FPA and Kmart's opposition, UDOT was able—pursuant to Utah Code section 78B-6-510 (Occupancy Statute)—to close the access point by depositing $1.25 million with the district court.[2]

---

[1] 2012 UT 79, 304 P.3d 810.

[2] The Occupancy Statute allows condemnors to proceed with a condemnation where they demonstrate a need to speedily occupy the property and post a deposit equal to the property's appraised value. UDOT met both of these requirements.

¶4 Shortly thereafter, FPA filed a motion requesting the district court to separately determine the value of each party's property interest. The district court granted this motion and UDOT filed an interlocutory appeal to this court, which we granted. In our decision on appeal, we held that under Utah Code section 78B-6-511 (Just Compensation Statute) courts are required to separately determine the value of a condemnation award for each affected property owner's property.[3] This valuation method is referred to as the aggregate-of-interests approach.

¶5 Returning to the district court, UDOT brought a motion for partial summary judgment against Kmart. UDOT argued that due to a condemnation provision in Kmart's lease with FPA, Kmart no longer had any interest for which it should be compensated.

¶6 This condemnation provision contains two operative clauses: (1) a termination clause and (2) a condemnation award allocation clause (allocation clause). The termination clause states that Kmart's lease would terminate if a condemnation "materially impaired" access to the leased property:

> In the event all of Tenant's buildings constructed by Landlord shall be expropriated or the points of ingress and egress to the public roadways . . . be materially impaired by a public authority or quasi-public authority, this lease shall terminate as of the date Tenant shall be deprived thereof.

And the allocation clause states that Kmart is not entitled to share in an award granted for a condemnation of FPA's buildings, but it preserves Kmart's right to compensation for any buildings or improvements made by Kmart:

> Tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings on demised premises, or any part thereof . . . ; however, the Tenant's right to receive compensation for damages or to share in any award shall not be affected in any manner hereby if said compensation, damages, or award is made by reason of the expropriation of the

---

[3] *Utah Dept. of Transp. v. FPA West Point LLC*, 2012 UT 79, ¶¶ 10, 51, 304 P.3d 810.

land or building or improvements constructed or made by Tenant.

UDOT argued that the termination provision extinguished Kmart's rights in the lease, so Kmart was not entitled to a condemnation award.

¶7 The district court ultimately denied UDOT's motion because it concluded that a factual determination needed to be made as to whether the "points of ingress and egress to the public roadways [were] materially impaired." Although the court did not address the effect the termination clause would have on Kmart's property interest if the access were found to be materially impaired, it did state that the first line of the lease's allocation clause did not apply in this case because of our adoption of the aggregate-of-interests valuation approach in *FPA*.[4]

¶8 After a bench trial, the court determined that the condemnation "materially impaired access and caused the Lease to terminate." Despite this finding, it awarded Kmart a condemnation award in the amount of $1.4 million.[5] UDOT appeals this decision.

¶9 Additionally, the district court awarded pre-judgment interest on the $1.25 million deposit UDOT had made in 2010. UDOT appeals this decision. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶10 UDOT raises two issues on appeal: first, whether the district court erred by awarding Kmart $1.4 million for Kmart's leasehold interest; and second, whether the district court erred by ordering UDOT to pay interest on amounts previously deposited with the

---

[4] The district court also stated that many of the cases UDOT had cited in its motion were distinguishable because the courts in those cases had not used the aggregate-of-interests approach. And the court held that a condemnation provision within the declaration of covenants governing FPA's property, which states that "all Owners may file collateral claims with the condemning authority over and above the value of the land and improvements located within the Common Area . . . ," also preserved Kmart's right to a condemnation award.

[5] In making this award, the court did not revisit the legal questions UDOT raised in its summary judgment motion.

court pursuant to the Occupancy Statute. We review a district court's interpretations of contracts,[6] statutes,[7] and prior case law[8] for correctness.

## Analysis

¶11 UDOT argues that the district court erred in awarding a condemnation award to Kmart because the termination clause in Kmart's lease extinguished any compensable property right Kmart previously had in the condemned property. Kmart argues, on the other hand, that our holding in *Utah Department of Transportation v. FPA West Point, LLC*[9] rendered termination clauses inoperative in Utah. In the alternative, Kmart argues that even if termination clauses are legally effective, its right to just compensation was preserved by the plain language of its lease agreement. We agree with UDOT and hold that the termination clause within Kmart's lease agreement extinguished Kmart's right to a condemnation award.

¶12 Additionally, UDOT argues that the court erred in ordering UDOT to pay interest on amounts it had previously deposited with the court pursuant to Utah's Occupancy Statute.[10] Because our holding regarding Kmart's right to a condemnation award moots this issue, we decline to address it.

### I. Termination Clauses

¶13 Generally, a lessee is entitled to a condemnation award if the value of its leasehold is diminished or terminated by a governmental exercise of the eminent domain power.[11] But a lessee's

---

[6] *Bodell Const. Co. v. Robbins,* 2009 UT 52, ¶ 16, 215 P.3d 933.

[7] *Utah Dep't of Transp. v. FPA West Point, LLC*, 2012 UT 79, ¶ 9, 304 P.3d 810.

[8] *Id.*

[9] 2012 UT 79, 304 P.3d 810.

[10] UTAH CODE § 78B-6-510.

[11] *Colman v. Utah State Land Bd.*, 795 P.2d 622, 626 (Utah 1990) ("A lessee holding under a valid lease also has a property interest protected by the takings clause . . . ."); *see also* 2 NICHOLS ON EMINENT DOMAIN § 12D.01[3][a], at 12D-23 (3rd ed. 1997) ("Leasehold interests are compensable property.").

right to a condemnation award may be altered,[12] waived,[13] or terminated by the terms of its lease.[14]

¶14 A lease provision affecting the rights of parties to a lease agreement in the event of a condemnation is commonly referred to as a condemnation provision. Although a condemnation provision may be structured in any way the parties like, it often contains a clause that terminates the lease upon "the taking by eminent domain of the whole or a part of the premises leased."[15] This type of clause

---

[12] *Pennsylvania Ave. Dev. Corp. v. One Parcel of Land in D.C.*, 670 F.2d 289, 292 (D.C. Cir. 1981) ("If there is a prior agreement between the parties as to allocation of a condemnation award, that agreement, of course, governs the disposition of the award.").

[13] *Vandevere v. Lloyd*, 644 F.3d 957, 969 (9th Cir. 2011) ("The lease plainly exempts regulatory takings of the kind challenged here from the requirement that Plaintiffs receive just compensation."); *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 295 (Alaska 2008) ("Under Alaska law, the right to compensation for a taking can validly be waived or contracted away in the terms of a lease.").

[14] *U.S. v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) ("We are dealing here with a clause for automatic termination of the lease on a taking of property for public use by governmental authority. With this type of clause, at least in absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing.").

[15] 2 NICHOLS ON EMINENT DOMAIN § 12D.01[3][e], at 12D-33 (3rd ed. 1997). A termination clause may provide that the lease terminates automatically upon condemnation, *Fibreglas Fabricators, Inc., v. Kylberg*, 799 P.2d 371, 375 (Colo. 1990) ("However, it is well established that a lessee may forego his or her right to compensation—and permit the landlord to receive all the condemnation proceeds—where the lease agreement contains a legally adequate 'condemnation clause' or 'automatic termination clause.'"), or at the option of one of the parties to the lease, *J.R. Skillern, Inc. v. leVision*, 591 S.W.2d 598, 599 (Tex. Ct. Civ. App. 1979) (holding that "[t]he lease provides in the event of condemnation that the lease 'shall, at the option of the landlord, terminate'"), or either party. *Redevelopment Agency of Salt Lake City v. Daskalas,* 785 P.2d 1112, 1114 (Utah Ct. App. 1989) (explaining that, pursuant to a

(Continued)

within a condemnation provision is often referred to as a termination clause.[16]

¶15 UDOT asks us to adopt a termination clause rule followed in most other jurisdictions.[17] Under this rule, when a lease agreement contains a termination clause, the lessee is not entitled to a condemnation award in the event of a condemnation, because any continuing interest in the leased property—the loss of which would otherwise have entitled the lessee to a condemnation award—has been extinguished under the lease agreement's terms. In other words, because the lessee's property interest is wholly created by the

---

condemnation clause, "the leases were terminable at will by either party").

[16] *See, e.g.*, *Cardi Am. Corp. v. All Am. House & Apartment Movers, L.L.C.*, 210 P.3d 1256, 1258 (Ariz. Ct. App. 2009) (discussing the effect of a "termination clause").

[17] *Id.* ("The decision in *Starzinger* reflects the prevailing view that 'where a lease provides for its termination at the lessor's option on condemnation of the property, the lessee has no right to compensation for the taking if the option is exercised.'"(citation omitted)); *see also Petty*, 327 U.S. at 376; *Nat'l R.R. Passenger Corp. v. Faber Enter., Inc.*, 931 F.2d 438, 442 (7th Cir. 1991); *U.S. v. Right to Use and Occupy 3.38 Acres of Land, More . . .*, 484 F.2d 1140 (4th Cir. 1973); *Bajwa v. Sunoco, Inc.*, 320 F. Supp. 2d 454 (E.D. Va. 2004); *Heir*, 218 F. Supp. 2d at 638 (U.S. District Court, New Jersey); *Vanek*, 193 P.3d at 295 (Alaska); ; *Capitol Monument Co. v. State Capitol Grounds Comm. ex re. Murry*, 251 S.W.2d 473 (Ark. 1952); *Kylberg*, 799 P.2d 371 (Colorado); *City and Cty. of Honolulu v. Mkt. Place, Ltd.*, 517 P.2d 7 (Haw. 1973); *State v. Heslar*, 274 N.E.2d 261 (Ind. 1971); *State v. Starzinger*, 179 N.W.2d 761 (Iowa 1970); *State v. LeBlanc*, 319 So. 2d 817 (La. Ct. App. 1975); *Sparrow Chisholm Co. v. City of Boston*, 97 N.E.2d 172 (Mass. 1951); *Metro. Airports Com'n v. Noble*, 763 N.W.2d 639 (Minn. 2009); *Bi-State Dev. Agency of Missouri-Illinois Metro. Dist. v. Nikodem*, 859 S.W.2d 775 (Mo. Ct. App. 1993); *Musser v. Bank of Am.*, 964 P.2d 51, 53 (Nev. 1998); *Carroll Weir Funeral Home, Inc. v. Miller, In re Appropriation of Easement for Highway Purposes*, 207 N.E.2d 747 (Ohio 1965); *In re Dep't of Transp., of the Right of Way for State Route 0202, Section 701*, 871 A.2d 896 (Pa. Commw. Ct. 2005); *Motiva Enterprises, LLC v. McCrabb*, 248 S.W.3d 211 (Tex. App. 2007); *Am. Creameries Co. v. Armour & Co.*, 271 P. 896 (Wash. 1928).

lease agreement,[18] when the lease terminates, so does the lessee's interest in the leased property, including the lessee's right to just compensation.[19] Because the termination clause rule conforms to our eminent domain and contract jurisprudence, we adopt it.

### A. The termination clause rule is consistent with general eminent domain principles

¶16 The termination clause rule is consistent with general eminent domain principles. Utah's "constitutional guarantee of just compensation is [only] triggered" if a party shows that they have some "protectable property interest in the property."[20] For this reason, compensation should be awarded only to claimants who demonstrate that they had an existing property right in the condemned property.[21]

---

[18] *One Parcel of Land in D.C.*, 670 F.2d at 292 ("Where a lease in condemnation is silent as to the tenant's rights, the tenant has a right to prove his damages in the condemnation proceeding inasmuch as a term-of-years leasehold constitutes a possessory interest in the fee."); 2 NICHOLS ON EMINENT DOMAIN § 12D.01[5][c], at 12D-28 (3rd ed. 1997) ("Compensation is due to the landlords for damage to their reversionary interest, and to tenants for damage to their leasehold.").

[19] *Petty*, 327 U.S. at 376 ("With this type of clause . . . the tenant has no right which persists beyond the taking and can be entitled to nothing."); *see also Heir*, 218 F. Supp. 2d at 638 ("[T]he right to compensation extends only as far as a party's contractual rights permit."); *Norfolk S. Ry. Co. v. Am. Oil Co.*, 198 S.E.2d 607, 609 (Va. 1973) ("Of course, if the lease itself includes a provision in respect of the rights of the parties in the event of condemnation of the leased premises, such provision is valid and controlling." (citation omitted)); 2 NICHOLS ON EMINENT DOMAIN § 5.02[6][f], at 5-88 (3rd ed. 1997) ("Under such a lease the tenant has no estate or interest in the property remaining after the taking to sustain a claim for compensation.").

[20] *Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 22, 275 P.3d 208 (internal quotation marks omitted); *see also id.* ("[T]he prohibition on takings found in the Utah Constitution" does not apply if the interest taken does not "qualif[y] as property.").

[21] *See Petty*, 327 U.S. at 376 (stating that compensation should only be awarded "for the value of the rights which are taken"); *see also*

(Continued)

8

¶17 We have frequently applied this principle in denying requests for condemnation awards. For example, in *Bingham v. Roosevelt City Corp.*,[22] a group of landowners alleged that a nearby city's diversion of water from an aquifer below the landowners' property amounted to a taking. But we denied their claim because the landowners had not lawfully appropriated the water, so "the [g]roup lacked a claim of entitlement to the continued presence of water in its soil."[23]

¶18 We also applied this principle in *Bagford v. Ephraim City*.[24] In that case, a garbage company sought damages from a city for passing an ordinance requiring all city residents to pay for city-operated garbage collection. But we denied its claim because the company's business "was based only on the expectation of being able to continue doing business there, not on a legal right to do so."[25] As these cases illustrate, before we grant a condemnation award, the claimant must show that it has an existing and protectable property interest in the condemned property.[26]

---

*United States v. Gen. Motors Corp.*, 323 U.S. 373, 378–79(1945) ("[T]he Fifth Amendment concerns itself solely with the 'property,' i.e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership. In the light of these principles it has been held that the compensation to be paid is the value of the interest taken."); *R & R Welding Supply Co. v. City of Des Moines*, 129 N.W.2d 666, 670 (Iowa 1964) ("Compensation cannot be allowed for something that does not exist.").

[22] 2010 UT 37, 235 P.3d 730.

[23] *Id.* ¶ 30.

[24] 904 P.2d 1095 (Utah 1995).

[25] *Id.* at 1100.

[26] *See also Admiral Beverage*, 2011 UT 62, ¶ 22 ("[A] takings claim presents two distinct inquiries: First, the claimant must demonstrate some protectable interest in property. If the claimant possesses a protectable property interest, the claimant must then show that the interest has been taken or damaged by government action. A claimant who makes this showing is then entitled to just compensation." (citations omitted) (internal quotation marks omitted)).

¶19 The termination clause rule accords with this principle by disallowing condemnation awards to lessees who no longer have an existing and protectable property interest in the condemned property because their leaseholds were terminated under the terms of the lease agreement.[27] A leasehold interest is a temporary right to occupy the real property of another. In the absence of a termination clause, a condemnation of leased property would deprive the lessee of its right to continue occupying the leased property for the remainder of the lease term. This would constitute a loss of an existing and protectable property right.[28] So, for example, if a lessee had five years remaining on its lease when the property it was leasing is condemned, the condemnor would be obligated to compensate the lessee for the value associated with the remaining five years of the lease term.[29]

¶20 But the same cannot be said when the lessee has agreed to include a termination clause in its lease agreement. When such is the case, the lessee has a right to occupy the real property until the end of the lease term or until the property is condemned.[30] Because the

---

[27] *See Burkhart Advert., Inc. v. City of Fort Wayne*, 918 N.E.2d 628, 634 (Ind. Ct. App. 2009) ("We conclude that the termination of a lease according to the parties' own provisions is not a taking of property. Given the termination of the lease pursuant to [the] proposed development of the property and our supreme court's [precedent], we conclude that [Appellant] had no interest in the property compensable by the City.").

[28] *See, e.g., Capitol Monument Co.*, 251 S.W.2d at 475 ("In the absence of any contract provision to the contrary, a tenant for years is ordinarily entitled to share in the compensation when the leased property is taken by eminent domain during the terms of the lease.").

[29] *See, e.g., Twin-State Eng'g & Chem. Co. v. Iowa State Highway Comm'n*, 197 N.W.2d 575, 578–79 (Iowa 1972) ("The measure of damages for a leasehold interest taken under eminent domain is declared generally to be the fair market value of the leasehold or unexpired term of the lease." (internal quotation marks omitted) (citing 27 Am. Jur. 2d, Eminent Domain, § 352)).

[30] *See, e.g., Capitol Monument Co.*, 251 S.W.2d at 475 ("But, when the lease, under which the tenant holds, provides that the lease will
(Continued)

lessee's leasehold interest is extinguished by the lease agreement's own terms, the lessee no longer has an ongoing protectable interest in the property from the date of the condemnation. As a result, the condemnor has not taken an *existing* and protectable property right for which it must compensate the lessee.[31] Accordingly, we hold that granting a condemnation award to a former lessee under these circumstances would be inconsistent with eminent domain law principles.

*B. The termination clause rule is consistent with general contract principles*

¶21 The termination clause rule is also consistent with general contract principles. It is a "basic principle of contract law that parties are generally 'free to contract according to their desires in whatever terms they can agree upon.'"[32] For this reason, "courts are loath to interfere with parties' ability to contract freely."[33]

¶22 A termination clause is an agreed upon term between a lessor and lessee that courts should uphold under general contract principles. One purpose of a contract is "to apportion risk of future events between the contracting parties."[34] A termination clause is consistent with this purpose. By agreeing to the inclusion of a termination clause, the lessee is freed from the risk of any continuing obligations under a lease agreement,[35] and the lessor is guaranteed a

---

be terminated by eminent domain proceedings, then the tenant is not entitled to compensation for the taking of the property.").

[31] *See Petty*, 327 U.S. at 376 ("With this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing."); 2 NICHOLS ON EMINENT DOMAIN § 5.02[6][f], at 5-88 (3rd ed. 1997) ("Under such a lease the tenant has no estate or interest in the property remaining after the taking to sustain a claim for compensation.").

[32] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 35, 367 P.3d 994 (citation omitted).

[33] *Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 31, 355 P.3d 947.

[34] *Id.*; *see also id.* ("[P]arties are free to allocate the risk of future events between them however they wish." (citation omitted)).

[35] *See, e.g., Right to Use and Occupy 3.38 Acres of Land*, 484 F.2d at 1144 ("Ordinarily, condemnation of a leasehold for part of the term
(Continued)

condemnation award for its reversionary interest in the leased property.[36] We see no reason to prevent this,[37] and so we hold that "[i]t is the agreement of the parties that controls whether the lessee has a compensable property interest in the appropriated property."[38] Accordingly, when contract parties agree that a lease will terminate upon condemnation, contract law principles require us to honor that agreement.[39]

### C. Our Decision in FPA *Does Not Affect the Applicability of Condemnation Provisions*

¶23 Despite the many compelling reasons for adopting the termination clause rule, Kmart argues that our holding in *FPA* renders condemnation provisions inoperative in Utah. But Kmart's

---

of an underlying lease does not invalidate the lease."). In this case Kmart was relieved of the obligation of continuing in a lease without an adequate access point.

[36] *Noble*, 763 N.W.2d at 644 ("When a lease contains a condemnation clause, the automatic termination language is read to deprive the lessee of any rights or entitlements beyond the taking since the lessee has 'contracted away any rights that it might otherwise have had.'" (*quoting Petty*, 327 U.S. at 376); *City and Cty. of Honolulu*, 517 P.2d at 15 ("This rule acknowledges that the allocation of risks in such circumstances is a matter as to which the parties are free to bargain.").

[37] *Greyhound Lines, Inc.*, 2015 UT 53, ¶ 31 (explaining that the only justification for declining to enforce a valid contract is if it is unconscionable).

[38] *City of Cincinnati v. Spangenberg*, 300 N.E.2d 457, 460 (Ohio Ct. App. 1973); *see also Heir*, 218 F. Supp. 2d at 638 ("[T]he right to compensation extends only as far as a party's contractual rights permit.").

[39] *Greyhound Lines, Inc.*, 2015 UT 53, ¶ 31 ("We have recognized that '[i]t is not [the court's] prerogative to step in and renegotiate the contract of the parties.' 'Instead, . . . we should recognize and honor the right of persons to contract freely and to make real and genuine mistakes when dealings are at arms' length.'" (internal citations omitted) (first and second alterations in original)).

argument fails because our holding in *FPA* is irrelevant to the applicability of condemnation provisions.[40]

¶24  In *FPA* we held that when the court is determining the value of a condemnation award, "the values of respective interests in a parcel of condemned property must be individually assessed."[41] This valuation rule is referred to as the aggregate-of-interests approach. Kmart argues that our adoption of the aggregate-of-interests approach necessarily renders condemnation provisions inoperative in Utah because "[c]ondemnation clauses [only] exist because most jurisdictions apply [a different valuation method]." Condemnation provisions are inoperative in aggregate-of-interest jurisdictions, Kmart argues, because the "sole function of condemnation clauses is to determine the landlord's and tenant's respective shares of condemnation awards only after the government has made a decision to *change the allocation of resources* by condemning property."[42] But Kmart is incorrect on this point for two reasons:

---

[40] Kmart cites a statement in the district court's summary judgment ruling to suggest that the court held that condemnation provisions do not apply in aggregate-of-interests jurisdictions. The district court stated that the first sentence in the lease's allocation clause—which states that "tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings on the demised premises"—did not apply in this case because our decision in *FPA* meant that "there [was] no issue of the landlord and tenant sharing an award." To the extent the district court intended to rule that our decision in *FPA* rendered condemnation provisions inoperative in Utah, we hold that it was incorrect.

Additionally, Kmart cites a Florida court of appeals case containing "a substantially identical condemnation clause" as is found in this case, for the proposition that this condemnation clause did not extinguish Kmart's rights. *K-mart Corp. v. State Department of Transp.*, 636 So.2d 131 (Fla. App. 1994). But that case deals only with an allocation clause, not a termination clause. *See id.* at 132.

[41] *Utah Dep't of Transp. v. FPA West Point, LLC*, 2012 UT 79, ¶ 3, 304 P.3d 810.

[42] In support of this assertion, Kmart cites a law review article, but no case law. *See* Victor P. Goldberg et. al., *Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant*, 34 UCLA L. REV. 1083, 1091. Although the purpose of an allocation clause could be described this

(Continued)

13

(1) the valuation method a court uses to determine the amount of a condemnation award does not affect the court's determination of which claimants are entitled to a condemnation award based on their property interest—a determination that is often dictated by the terms contained in a condemnation provision, and (2) the condemnation of property does not change the allocation of property interests by resetting the property's division of ownership.

1. The valuation method used by a court does not affect the
   applicability of a condemnation provision

¶25 The valuation method a court uses to calculate the value of a condemnation award is irrelevant to the court's determination of which claimants are entitled to an award. We have previously established that a court must answer two distinct inquiries before it calculates the value of a condemnation award. First, the court must determine whether the claimant possesses "some protectable interest in [the] property."[43] Second, the court must determine whether "the interest has been taken or damaged by government action."[44] Only after those first two steps are complete should a court proceed to the third step of calculating the amount of "just compensation" to award the claimant.[45] Importantly, neither of the first two steps is affected by the approach the court employs in the third.

¶26 Although our holding in *FPA* marked a departure from other jurisdictions on the question of valuation, it did not alter the analysis a court should follow when answering the first two inquires in an eminent domain determination.[46] In fact, at several points in

---

way in some cases, Kmart takes this line of reasoning to an absurd point. Kmart seems to be arguing that condemnation provisions are necessary only because a condemnation in an undivided fee jurisdiction—but not an aggregate-of-interests jurisdiction—somehow resets the division of property ownership, so parties to a lease must insert contractual provisions to determine the proper allocation of a condemnation award in the event of a condemnation. This is incorrect.

[43] *Admiral Beverage*, 2011 UT 62, ¶ 22.

[44] *Id*. (internal quotation marks omitted) (citation omitted).

[45] *Id*. (internal quotation marks omitted) (citation omitted).

[46] *See generally FPA*, 2012 UT 79, ¶¶ 24–35 (recognizing that the requirement to show a right to just compensation still exists).

our decision in *FPA* we made it clear that courts must still determine whether a claimant has a protectable property interest before it commences an aggregate-of-interests valuation.[47] Because the purpose of a condemnation provision is to establish which parties have protectable property interests in the event of a condemnation, a condemnation provision remains relevant even where the court uses an aggregate-of-interests approach to value the property later in the condemnation award analysis. In other words, that Utah courts must employ the aggregate-of-interests approach to value a condemnation award during the third step of a condemnation award analysis has no bearing on a court's determination of which parties are entitled to a condemnation award during the analysis's first step. For this reason, we hold that our adoption of the aggregate-of-interests approach in *FPA* did not render condemnation provisions inoperative in Utah.[48]

---

[47] *Id.* ¶ 24 ("And we have recognized that '[a] lessee *holding under a valid lease* also has a property interest protected by the takings clause of the constitutional provisions.'" (alteration in original) (emphasis added) (citation omitted)); *Id.* ¶ 25 ("Thus, '[o]nce a landowner demonstrates that a protectable property interest has been taken . . . the landowner is entitled to just compensation.'" (alteration in original) (emphasis added) (citation omitted)).

[48] That the method of valuation does not invalidate condemnation provisions is supported by the fact that condemnation provisions are still enforced in other aggregate-of-interests jurisdictions. For example, in *FPA* we cited Iowa and Georgia as examples of states that have authorized courts to use the aggregate-of-interests approach, *FPA*, 2012 UT 79, ¶ 12, n.15 (citing cases from Iowa, Georgia, and Nebraska), and both Iowa and Georgia recognize the validity of condemnation provisions. *See Starzinger*, 179 N.W.2d at 765; *R & R Welding Supply Co.*, 129 N.W.2d at 670 ("Compensation cannot be allowed for something that does not exist.") *see also Lamar Co., LLC v. State*, 568 S.E.2d 752, 753 (Ga. Ct. App. 2002) ("It is axiomatic that, to recover for the taking of a leasehold, the lessee must, in fact, have such interest in the property. Accordingly, if the lessee has waived its interest, it is not entitled to recover for compensation as a condemnee." (footnotes omitted)). So Kmart's argument that a state's adoption of the aggregate-of-interests approach necessarily precludes the application of condemnation provisions is not supported by the case law in other jurisdictions.

## 2. A condemnation of property does not reset the property's division of ownership

¶27 Kmart's argument also fails because it is based on an incorrect understanding of the effect a condemnation has on property with divided ownership. Kmart claims that a condemnation of property changes the allocation of resources among the holders of property interests in the property. And it suggests that because of this, owners of divided property must insert condemnation provisions to re-allocate those interests in the event of a condemnation. But this argument fails because a condemnation does not trigger a re-allocation of ownership interests in the condemned property.

¶28 When property is condemned, the owners of the property are entitled to just compensation for the property they owned at the time the property is taken. Consequently, the exercise of the eminent domain power is constitutional only "when a property owner is made whole by placing him in the position he would have occupied but for the taking."[49] To satisfy this constitutional requirement, a court must determine what property rights a claimant possessed at the time of the taking.[50]

¶29 Accordingly, a condemnation does not trigger a re-allocation of property rights among owners of the condemned property; it merely requires each property owner to give the condemnor his or her property right in exchange for the fair market value of that right. So in the absence of a condemnation provision, a lessee would be entitled to the value of its leasehold interest in the property and the lessor would be entitled to the value of its reversionary interest.[51] Consequently, the parties do not need a condemnation provision to guarantee these rights.

---

[49] *Admiral Beverage*, 2011 UT 62, ¶ 28.

[50] *See id.* (explaining that the constitutional requirements of "just compensation" are only satisfied if the property owner is "put in as good [a] position pecuniarily as he would have been if his property had not been taken" (citation omitted)).

[51] 2 NICHOLS ON EMINENT DOMAIN § 12D.01[5][c], at 12D-28 (3rd ed. 1997) ("Compensation is due to the landlords for damage to their reversionary interest, and to tenants for damage to their leasehold.").

¶30 This is true even in jurisdictions that do not use the aggregate-of-interests approach. Under the undivided fee method—the valuation method used in the majority of states—courts calculate the value of each claimant's property interest as a percentage of the value of the property in its undivided form.[52] But this is not the same as reallocating property interests among the parties. Each party is still entitled to the value of the property interest that was rightfully theirs under the contract at the time of condemnation. So contrary to what Kmart suggests, individuals with existing rights in a condemned property do not need an allocation clause to preserve their right to a condemnation award, even in undivided fee jurisdictions.[53] For this reason, it is clear that Kmart's assertion—that the only purpose of a condemnation provision is to re-allocate property interests in undivided fee method jurisdictions after a governmental exercise of the eminent domain power disrupts the previous allocation—is wrong.

¶31 In fact, condemnation provisions cannot be pigeonholed to just one purpose. Rather, condemnation provisions can have many purposes, and often contain multiple operative clauses that go beyond allocating parties' rights to condemnation awards.[54]

---

[52] *FPA*, 2012 UT 79, ¶ 13; *Cty. of Clark v. Sun State Props., Ltd.*, 72 P.3d 954, 958 (Nev. 2003) ("The undivided-fee rule provides that condemned property is first valued as though it was unencumbered, and in a subsequent hearing, the total award is apportioned among the various interests.").

[53] *See City of Dublin v. Friedman*, 101 N.E.3d 1137, ¶ 50 (Ohio Ct. App. 2017) ("Generally, a tenant does have 'a property right in the leasehold and, in the absence of an agreement to the contrary, is entitled to compensation if it is appropriated by eminent domain.'" (citation omitted)).

[54] *See Noble*, 763 N.W.2d at 645 ("[W]e affirm the general rule that a condemnation clause automatically terminates a lessee's interest in the property and bars a lessee's claim to part of the condemnation award. Further, we are bound by a rule of contract interpretation that requires us to give effect to all of a contract's terms. In order to give effect to all of the terms in a lease, if the lease contains a clause for apportioning the condemnation award, then the apportioning agreement governs. If the lease contains no language on apportioning the award, the entirety goes to the lessor." (citation

(Continued)

¶32 The two most common clauses in condemnation provisions are termination clauses and allocation clauses. A termination clause, as its name suggests, terminates the lessee's right to just compensation on the date of condemnation, resulting in a reversion of the property interest to the lessor.[55] An allocation clause, on the other hand, allows the lease parties to transfer their still-existing rights to a compensation award among themselves.[56] These two types of clauses can be tailored to address a variety of future circumstances.[57]

¶33 The condemnation provision in the lease in this case provides a good example of how this is done. The condemnation provision contains six paragraphs. The first paragraph contains a termination clause that could be triggered by the condemnation of

omitted)); *City and Cty. of Honolulu*, 517 P.2d at 15 ("This rule acknowledges that the allocation of risks in such circumstances is a matter as to which the parties are free to bargain."); *Musser*, 964 P.2d at 53 (discussing termination clauses and allocation clauses); *Pepsi-Cola Metro. Bottling Co. v. Romley*, 578 P.2d 994, 999 (Az. Ct. App. 1978) ("With these admonitions in mind, it appears to us that as a whole, this clause has two major objectives in mind: (1) to grant to the lessee an option to terminate the lease in the event of condemnation of all or more than 25% of the leased premises, and (2) to define the rights of the parties in the event of condemnation of a part of the leased premises when the lessee does not exercise its option to terminate and remains in possession.").

[55] *Musser*, 964 P.2d at 53 ("A termination clause in a lease without accompanying language regarding how any compensation award is to be allocated, is sufficient to bar a lessee's claim to part of the award.").

[56] *Id.*, at 54 ("If there exists a prior agreement between a landlord and tenant as to allocation of condemnation proceeds, that agreement governs the disposition of those proceeds. The leases in this case provide that in the event of a total condemnation, or if the Lessees, in good faith, elect to terminate the leases in the event of a partial condemnation, the Lessees are entitled to a portion of the award." (citation omitted)).

[57] *See In re Dep't of Transp. of the Right of Way for State Route 0202, Section 701*, 871 A.2d at 900 ("Due to the conflict between the interests of a landlord and its tenant, leases may include a condemnation clause to address this potential conflict.").

either "all of Tenant's buildings" or "the points of ingress and egress." When this clause is triggered, Kmart's leasehold interest, as well as its right to just compensation, is extinguished and the right to present possession of the leased property reverts back to FPA.

¶34 But because of the possibility of a partial condemnation that does not trigger the termination clause—such as a partial condemnation of Kmart's building or an immaterial impairment of points of ingress and egress—the parties also included an allocation clause in the condemnation provision's sixth paragraph. This clause states that "Tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings." Thus FPA specifically reserved a right to any condemnation award granted for any buildings to which it held title. So in the event of a partial condemnation, the lease would continue in effect, but any portion of a condemnation award for FPA's building—to which Kmart would otherwise have been constitutionally entitled under the terms of the still-effective lease agreement—is allocated to FPA.

¶35 Additionally, because Kmart could have potentially been entitled to the value of any fixtures or improvements it made to FPA's land or building, the parties included a clause in the sixth paragraph's last sentence, which clarifies that Kmart has not waived its right to receive compensation for any unamortized fixtures or improvements it installed or made to the leased premises.

¶36 As the lease agreement in this case illustrates, parties to a lease agreement can draft a condemnation provision with multiple operative clauses aimed at addressing a variety of future circumstances. Although some of these clauses might not be applicable in every future circumstance (i.e. the lessor's allocation clause may not be necessary where the lease terminates pursuant to a termination clause, thereby reverting the right of present possession back to the lessor), each clause has an independent purpose and should therefore be enforced where applicable. Because Kmart does not consider the possibility that condemnation clauses could have purposes other than to shift existing property rights from a tenant to a landlord, its contention that condemnation clauses are unnecessary in aggregate-of-interest jurisdictions is incorrect. Accordingly, Kmart's claim that our decision to adopt the

aggregate-of-interests valuation approach in *FPA* renders condemnation provisions inoperative in Utah fails.[58]

¶37 In sum, we adopt the termination clause rule because it is consistent with longstanding eminent domain and contract principles, and our holding in *FPA* does not foreclose its adoption. Accordingly, we hold that where the terms of a lease agreement terminate a lease upon condemnation, a lessee's right to just compensation is extinguished, unless otherwise reserved by contract.[59]

---

[58] At various points in its brief, Kmart also argues that the our enforcement of the condemnation clause would "provide a windfall to UDOT,"—it would shift the burden of the taking from "all taxpayers" and place it solely on Kmart, and it would change the proper condemnation analysis from the proper question of "what has Kmart lost[?]" to "what will UDOT gain[?]." But these arguments stem from a misunderstanding of the underlying justifications for the termination clause rule. Each of these arguments fails to address the fact that Kmart contracted away its property interest in the lease—including a right to just compensation—when it agreed to include the termination clause in its lease agreement with FPA. Because Kmart's loss of a right to a condemnation award is dictated by the terms of Kmart's own agreement, an adoption of the termination clause rule would not, as Kmart suggests, provide a windfall to UDOT. This is so because UDOT did not take Kmart's leasehold interest; the parties, through agreeing to include a termination clause in the lease, did. And it would not improperly shift a burden from the public to Kmart, because Kmart and FPA already agreed to shift the burden from FPA to Kmart. And lastly, it would not change the analysis from looking at what Kmart lost as a result of the condemnation to what UDOT took. Instead, it merely requires us to arrive at a conclusion Kmart does not like: Kmart did not lose an existing property right.

[59] *See Noble*, 763 N.W.2d at 645 (explaining that even in the presence of a termination clause, the parties may agree to allocate the lessor's right to a condemnation award to the lessee through an allocation clause in the condemnation provision).

## II. We Hold that the Termination Provision in Kmart's Lease extinguished Kmart's Right to Just Compensation

¶38 UDOT argues that the district court erred in awarding a condemnation award to Kmart because Kmart's lease with FPA contained a condemnation clause and it did not otherwise reserve Kmart's right to just compensation in the event of a condemnation. We agree.

¶39 Kmart's lease agreement with FPA contained a termination clause providing that Kmart's leasehold interest would be terminated in the event a condemnation "materially impaired" an access point to the property:

> In the event all of Tenant's buildings constructed by Landlord shall be expropriated or the points of ingress and egress to the public roadways . . . be materially impaired by a public authority or quasi-public authority, this lease shall terminate as of the date Tenant shall be deprived thereof.

Although, in its summary judgment order, the district court was correct in concluding that whether the condemnation "materially impaired" Kmart's access presented a question of fact that needed to be presented to the fact finder, at trial it erred in awarding a condemnation award to Kmart after it had found that access had been materially impaired. Because the court found that Kmart's access had been materially impaired, it should have held that the termination clause in the lease was triggered, thereby extinguishing Kmart's right to a condemnation award.

¶40 On appeal, Kmart argues that the district court was correct in granting it a condemnation award, even though the termination clause was triggered, because nothing in the lease expressly waived its right to share in this condemnation award. But this argument fails for two reasons: (1) where a lease contains a termination clause, a lessee's right to just compensation is extinguished even in the absence of an express waiver of that right, and (2) the plain language of the allocation clause shows that Kmart reserved only a right to compensation for the value of any fixtures or improvements it constructed or made to the leased property, and Kmart has not

asserted that it was entitled to a compensation award under this provision.[60]

¶41 First, Kmart is not entitled to a condemnation award despite the fact that the agreement did not contain an express waiver of its right to just compensation. When a termination clause terminates a lessee's leasehold interest, it extinguishes all of the lessee's rights in the leasehold.[61] Accordingly, a termination clause extinguishes a

---

[60] Kmart also argues that a condemnation clause contained in a declaration of covenants governing FPA's property preserved Kmart's rights in the property. But the condemnation clause in the covenants applies only to "Owners" of the property. Kmart argues, however, that this condemnation provision should apply to it, as a lessee, because the "general tenor" of the covenants was to "preserve rights" to just compensation in the event of a condemnation. In support it cites section 5.01 of the covenants, which grants "Owners" an easement over the property, and section 5.02, which states that the easement established in section 5.01 "shall be for the benefit of . . . the Owners [and] the lessees of the Owners." But Kmart's argument fails, even if the condemnation provision in the covenants applies to lessees, because once the termination clause in Kmart's lease agreement was triggered, Kmart ceased being a lessee. For this reason, the rights guaranteed by the covenants do not apply to Kmart.

[61] *See supra* section I. It is possible, however, for parties to a lease agreement to draft a termination clause in such a way that the condemnation terminates the parties' obligations to each other but does not terminate the lease as a whole. *See Maxey v. Redevelopment Auth. of Racine*, 288 N.W.2d 794, 806-07 (Wis. 1980) (holding that a lease, which stated upon condemnation "such condemnation shall terminate the further liabilities of both the lessors and lessees under this lease," did not explicitly terminate the lease, just the parties' liabilities under the lease). If the termination clause is drafted in this way, the lessee would maintain a right to just compensation unless it also waived or assigned the right through an allocation clause. *Id.* But such is not the case here. The plain language of the termination clause contemplates the termination of the actual lease, not just the parties' obligations under it. *Compare* language of termination clause in this case ("this lease shall terminate as of the date Tenant shall be deprived thereof") *with* language of termination clauses in other cases where courts found that the lessee's right to just compensation

(Continued)

lessee's right to just compensation even where the lessee does not affirmatively waive its right to a condemnation award elsewhere in the lease agreement.[62]

¶42 Second, the plain language of the allocation clause in the lease agreement preserves only Kmart's right to an award granted for a condemnation affecting improvements Kmart added or made to the leased property. The lease's allocation clause is found in the sixth paragraph of the condemnation provision. It contains three operative parts:

> [(1)] Tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings on demised premises, or any part thereof, by public or quasi-public authority, [(2)] except as set forth in the preceding paragraph relative to unamortized expenditures by Tenant and then only if the award for such unamortized expenditures shall be made by the expropriating authority in addition to the award for the land, buildings and other improvements (or portion thereof) comprising the demised premises; however, [(3)] the Tenant's right to receive compensation for damages or to share in any award shall not be affected

---

was terminated: *Motiva Enters., LLC v. McCrabb*, 248 S.W.3d 211, 213 (Tex. Ct. App. 2007) ("this lease shall terminate as of the date when possession is required to be given in such condemnation"); *Fibreglas Fabricators, Inc., v. Kylberg*, 799 P.2d 371, 373 (Colo. 1990) ("this Lease Agreement shall terminate and the rent shall be apportioned as of the date the governmental authority takes possession of the Leased Premises pursuant to such Proceeding"); *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 642 (Minn. 2009) ("If substantially all of the leased premises shall be taken by any public authority under the power of eminent domain then the term of this Lease shall cease as of the day possession shall be taken by such public authority . . . .").

[62] *See Musser v. Bank of Am.*, 964 P.2d 51, 53 (Nev. 1998) ("A termination clause in a lease without accompanying language regarding how any compensation award is to be allocated, is sufficient to bar a lessee's claim to part of the award."); *Kylberg*, 799 P.2d at 375 ("Similarly, the absence of a provision in the condemnation clause specifying whether Fibreglas is entitled to share in the condemnation proceeds does not render the clause ambiguous.").

in any manner hereby if said compensation, damages, or award is made by reason of the expropriation of the land or building or improvements constructed or made by Tenant.

¶43 The first part of the allocation clause states that Kmart does not have a right to a condemnation award for a condemnation of any "Landlord buildings" or any part thereof. This part waives Kmart's right to share in any condemnation award given for a condemnation of buildings Kmart is leasing.

¶44 Kmart argues that this part shows that the parties did not intend the termination clause to extinguish Kmart's property rights because, if it did, "[t]here would be no reason to specify that Kmart 'shall not be entitled to share in any award made by reason of expropriation' of Kmart's building." But this argument overlooks the fact that the termination clause left open the possibility of a partial condemnation that does not trigger the termination clause—such as a partial condemnation of Kmart's building—so it was necessary for FPA to include a clause allocating Kmart's rightful share of a condemnation award to FPA in those circumstances. So in the event of a partial condemnation the lease would continue in effect, but under the terms of this first part, any portion of a condemnation award to which Kmart would have otherwise been entitled is allocated to FPA. Importantly, nothing in this part preserves a right to the condemnation award granted in this case.

¶45 The second part of the allocation clause exempts Kmart from the award allocation described in the first part when the award is given for "unamortized expenditures." This is a common provision in an allocation clause that preserves a lessee's right to an award for the cost of immovable fixtures or improvements the lessee installed on the leased property if those costs have not already been recovered through tax deductions.[63] The inclusion of this provision

---

[63] *See Universal Mktg., Inc. v. C.I.R.*, 94 T.C.M. (CCH) 374 at *4 (T.C. 2007) ("Under section 162(a), a taxpayer may deduct ordinary and necessary business expenses incurred or paid during the taxable year. Generally, a taxpayer carrying materials and supplies on hand is allowed to deduct expenditures for them only in the amount that they are actually consumed and used in operation during the taxable year. However, the cost of acquiring property having a useful life beyond a taxable year is a nondeductible capital expenditure." (footnote omitted) (citation omitted)). Because the lessee is unable to

(Continued)

allows Kmart to recoup the cost of fixtures or improvements so long as it has not already recouped that cost through amortization deductions. But unamortized expenditures are not at issue, so this part does not preserve Kmart's right to any part of the condemnation award in this case.

¶46 Finally, the third part clarifies that nothing in the lease agreement affects Kmart's right to receive a condemnation award given for any improvements Kmart made or added to the leased premises. It states that Kmart's "right to receive compensation . . . shall not be affected in any manner hereby if said compensation . . . is made by reason of the expropriation of the land or buildings or improvements constructed or made by Tenant." So this part preserves only Kmart's right to receive a condemnation award granted for the value of any improvements made by Kmart.

¶47 Kmart argues, however, that this part suggests that the parties did not intend the termination clause to extinguish Kmart's right to compensation. It claims that if its rights were extinguished by the termination clause, the third part would be rendered "null and void" because Kmart would no longer have a right to just compensation that could be preserved. But this argument fails because (1) it once again overlooks the fact that the termination clause left open the possibility of a partial condemnation that does not trigger the termination clause, and (2) the terms of a lease may function to preserve a lessee's right to a condemnation award against a lessor for improvements made to the leased premises, even where the lessee's leasehold has terminated.[64] Accordingly, the third part of

---

immediately deduct the cost of the improvement or fixture as a business expense that adds value to the property under the tax code, it is forced to make periodic, amortized deductions as the improvement depreciates over time. *Id.* So if a termination clause terminates a lease upon condemnation before the improvement or fixture had completely depreciated, the lessor would benefit from the value of an improvement that was included wholly at the lessee's expense. A clause preserving a lessee's right to the value of improvements protects the lessee from this unfair result.

[64] *See Noble*, 763 N.W.2d at 645-46 (recognizing that a "lease is a form of a contract," so it was possible for the parties to the lease to have "allocated [a] portion of the award for the value of immovable fixtures," even though the lease contained a termination clause extinguishing the lessee's leasehold); *Musser*, 964 P.2d at 54

(Continued)

the allocation clause is not rendered superfluous by the termination clause, and so it does not suggest that the parties did not intend the termination clause to terminate Kmart's lease.

¶48  In sum, because the lease contains a valid termination clause and does not contain an express reservation of Kmart's right to a condemnation award, Kmart no longer had a protectable property interest in the leased property when the district court made its condemnation award determination. Accordingly, we hold that the district court erred when it granted a condemnation award to Kmart.

## Conclusion

¶49  We hold that where a lease agreement contains a provision terminating a lessee's leasehold interest upon a condemnation, the lessee no longer has a protectable property interest entitling it to a condemnation award. Because Kmart's lease agreement in this case contained a termination clause, Kmart's property rights were extinguished under the lease. The district court, therefore, erred in granting Kmart a condemnation award. Accordingly, we reverse the district court's condemnation award to Kmart.

—————

(apportioning the value of an award attributable to improvements to the lessee even though the lease contained a termination clause extinguishing the lessee's leasehold).