141 Nev., Advance Opinion 19

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| VIRGIN VALLEY WATER DISTRICT,<br>Appellant,<br>vs.<br>PARADISE CANYON, LLC,<br>Respondent. | No. 87056 |



FILED

APR 24 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment in a contract action involving water rights leased to a golf club. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed in part, reversed in part, and remanded.*

Hutchison & Steffen, LLC, and Joseph C. Reynolds, Piers R. Tueller, and Russell J. Carr, Las Vegas,
for Appellant.

Sylvester & Polednak, Ltd., and Jeffry R. Sylvester and Matthew T. Kneeland, Las Vegas,
for Respondent.

Parsons Behle & Latimer and Gregory H. Morrison and Ethan J. Foster, Reno,
for Amicus Curiae Moapa Valley Water District.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Appellant Virgin Valley Water District is a political subdivision of the State that manages and distributes water resources within a southern Nevada region. In 2011, the District entered into a lease agreement with respondent Paradise Canyon, agreeing to provide Paradise Canyon shares of water for irrigating the Wolf Creek Golf Club. While the lease agreement granted Paradise Canyon a right of first refusal as to renewing the agreement, the contract unambiguously provided the District with sole and absolute discretion in rate-setting during the renewal period.

At renewal in 2020, the District notified Paradise Canyon that it intended to increase the rental rate per share of water. Paradise Canyon sued the District for declaratory relief and damages, alleging that the rate increase was a bad faith breach of the lease agreement. The trial court entered summary judgment on certain declaratory relief claims, and the case proceeded to a jury trial on the remaining claims. When a contractual provision is unambiguous, however, its interpretation presents a matter of law for the court to resolve, not a jury. Given that the relevant provision here was unambiguous, the trial court erred in failing to find that the District had sole and absolute discretion to set the rental rate after January 1, 2020. Sending that question to the jury was error, and thus the verdict resulting from the jury's mistaken reading of the lease and the trial court's judgment resting on that jury verdict are in error. We reverse the portions of the judgment interpreting the renewal provisions of the lease and affirm the portions pertaining to beneficial use, to matters the parties did not argue, and on which the trial court reached the correct outcome.

 

While reversal in part is compelled on this basis alone, the trial court also allowed inflammatory and inappropriate opening statements, improperly took judicial notice of its own factfinding, implemented unfair trial practices, and incorrectly instructed the jury, and we conclude that addressing these errors is warranted. Ultimately, we remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In 2000, Paradise Canyon opened Wolf Creek Golf Club in Mesquite, Nevada. In 2004 and 2007, the Virgin Valley Water District had contracted with Paradise Canyon to lease irrigation shares of water based on the market rate "in and around the area of Mesquite." In 2011, the parties executed a new lease for 155 shares of water at an annual rent amount of $250 per share. The 2011 lease did not restrict the rental rate to rates in the Mesquite area or include any other geographical limit. The 2011 lease set forth that it would not extend beyond 2019 but provided Paradise Canyon with a right of first refusal to renew the lease. The lease further provided the District with "sole and absolute discretion" to determine the rental rates after January 1, 2020, should Paradise Canyon elect to renew the lease.

In 2019, the District informed Paradise Canyon that it would increase the annual rental rate to $1,115.67 per share starting in 2020. Paradise Canyon objected to the increase and filed the underlying complaint. Paradise Canyon claimed that the District breached the implied covenant of good faith and fair dealing by increasing the per-share rate to an amount that did not reflect the market rate in and around Mesquite (as the parties' previous leases had required).

In response to the complaint, the District sent a letter to Paradise Canyon asking Paradise Canyon to voluntarily dismiss its claims. The District stated in the letter that it did not intend to sue Paradise Canyon for breach of contract as to its lease obligation to use effluent water or a separate duty concerning beneficial use. Paradise Canyon declined to dismiss, the District changed its position and filed counterclaims, and the case proceeded in trial court. Subsequently, the parties each moved for summary judgment. The trial court granted partial summary judgment for Paradise Canyon on its claims for declaratory relief regarding effluent water and beneficial use, the applicability of the implied covenant of good faith and fair dealing to the parties' lease, and perpetuity rights. The trial court set for a jury trial the remaining claims for breach of the implied covenant of good faith and fair dealing, breach of contract, and declaratory relief as to Paradise Canyon's justified expectations and the fair market value of the leased irrigation shares and to set the fair rental rate for the lease.

Twelve days before trial commenced, the trial court issued a 24-page order entitled "Facts Established for Trial." The jury was instructed that it "must accept these facts as true" and "the findings of undisputed facts therein are deemed established for trial." The District, however, thoroughly disputed many facts within the order. In the order, the trial court (1) described the procedural history of the litigation, including that the court had "ruled in favor of Paradise Canyon on each motion"; (2) referenced the District's counsel's involvement in settlement discussions and counsel's role in drafting the lease agreement; and (3) used sympathetic terms in finding that Paradise Canyon would suffer great hardship if the lease were not renewed. The order informed the jury that the lease agreement provided Paradise Canyon with "a right to renew the [contract]

SUPREME COURT
OF
NEVADA

(O) 1947A

on a perpetual basis" and that the District misinterpreted that provision "as a so-called 'right of first refusal.'" The order also questioned the veracity of the District's counterclaim. Additionally, the trial court admitted the District's counsel's letter to Paradise Canyon as evidence of the District's alleged "retaliatory motive and bad faith enforcement" of the lease.

During its opening statement, Paradise Canyon referred to the District's defense as a "blitzkrieg" and showed the jury images of World War II-era tanks and planes. Paradise Canyon also blamed the District's counsel for causing the dispute while showing images of legal correspondence to the jury. Paradise Canyon further showed the jury several slides of trial court rulings to indicate which facts were already "established." The District unsuccessfully moved for a mistrial on these bases.

The trial court emphasized urgency to the parties throughout trial. After Paradise Canyon's case, the trial court announced "strict time limitations on everyone" and that to reach a "hard deadline" to finish trial, "all evidence ha[d] to be finished by [a specific day]." The time limits, however, imposed through digital clocks visible to the jury, were only enforced during presentation of the District's case. The District unsuccessfully objected, explaining that under the limitations, it would only be able to call roughly one-third of its witnesses and put forward fewer than half of its proposed exhibits. As a result, the District's case-in-chief was limited to 2½ days, compared to the 12 days afforded to Paradise Canyon.

Toward the end of trial, the trial court gave the jury the following instruction: "You are not bound by the express terms of the contract but are free to go beyond the literal wordage of the written document." The trial court also instructed the jury that Paradise Canyon's "justified expectations at the time of the contract formation determine the reasonableness of the District's conduct" and that the jury was to decide the

rental value of the leased irrigation shares as of January 1, 2020, "according to the fair rental value in the local market in and around the City of Mesquite." Additionally, although the District presented evidence that it executed a contract with the Southern Nevada Water Authority (SNWA) in 2014 at a rate comparable to the renewal rate, the trial court instructed the jury to determine fair market value without considering rates paid by SNWA.

The jury found that the District had committed a bad faith breach of the lease agreement and determined that the fair market value of the leased irrigation shares as of January 1, 2020, was $300 per share. The trial court awarded Paradise Canyon $893,869.33 in damages based on the $300-per-share rate. The District appeals.[1]

## DISCUSSION

### The trial court did not violate the separation of powers

To begin, the District argues that the trial court violated the District's sovereign authority as "a co-equal branch of Nevada government" to set rates by overriding its rate-setting. The District claims that setting rent amounts for shares of water is an "inherent governmental function," and thus not reviewable by the trial court.

The Nevada Constitution separates government power between the legislative, executive, and judicial departments. *Nev. Pol'y Rsch. Inst., Inc. v. Miller*, 140 Nev., Adv. Op. 69, 558 P.3d 319, 326 (2024). One department of state government may not encroach on the exercise of a governmental power vested in another department. *Id.* For instance, the judiciary may not encroach on the exercise of power vested in the executive

---

[1]Amicus curiae Moapa Valley Water District has filed a brief in support of the District.

department. *Id.* This dispute, however, does not present an example of such encroachment but rather a routine contractual dispute. "When the [government] enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607-08 (2000) (internal quotation marks omitted). That a party "is a government body does not entitle it to any special preference in our construction of the contract." *Am. Fire & Safety, Inc. v. City of North Las Vegas*, 109 Nev. 357, 360, 849 P.2d 352, 354-55 (1993).

The District entered into a lease agreement with Paradise Canyon. Paradise Canyon sued and contested its respective rights and obligations under that lease, and the trial court adjudicated the dispute. In this regard, the trial court acted in its customary role of interpreting a contractual dispute between two parties; it did not exercise a governmental authority belonging to a different department of state government. Thus, the trial court did not violate the separation of powers.

*The lease agreement gave the District sole and absolute discretion in setting the rental rate after January 1, 2020*

The District argues that the trial court erred by disregarding the provision in the lease agreement unambiguously granting it discretion to set the rental rate for water shares. The District argues that Paradise Canyon merely possessed a right of first refusal to the shares of water and not a right to renew the lease on the same terms on a perpetual basis. Paradise Canyon counters that the lease granted it the right to renew the lease on a perpetual basis so long as it paid the fair rental rate and did not otherwise breach the lease. We agree with the District.

"A basic rule of contract interpretation is that every word must be given effect if at all possible." *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (internal quotation marks omitted). If "the language of the contract is clear and unambiguous," the court will enforce the contract as written. *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015) (internal quotation marks omitted). Ambiguity does not arise simply because the parties dispute the interpretation of a contract but rather requires that a contract's terms can be *reasonably* interpreted multiple ways. *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 137 Nev. 76, 83, 482 P.3d 665, 673 (2021). A jury may resolve factual disputes relating to contractual interpretation but may not interpret unambiguous contractual provisions, which present questions of law. *Fed. Ins. v. Coast Converters*, 130 Nev. 960, 965, 339 P.3d 1281, 1284 (2014); *see also Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 155 (3d Cir. 1992) (reversing the district court and overturning a jury verdict where the underlying contract was unambiguous and summary judgment therefore should have been entered).

The relevant lease agreement clause provides:

Right of First Refusal

In exchange for Lessee's payment of the Right of First Refusal Fee, Lessee shall have the right but not the obligation to lease the Irrigation Shares upon the same terms as set forth in this Lease for the number of subsequent years set forth above . . . .

Under no circumstances shall Lessee have the right to lease the Irrigation Shares on the same terms as set forth in this Lease after January 1, 2020. Nevertheless, after January 1, 2020, if Lessee continues to hold the right of first refusal as to any of the Irrigation Shares, Lessee shall have the right to continue to lease the same Irrigation Shares on

SUPREME COURT
OF
NEVADA

(O) 1947A

8

a perpetual basis provided Lessee is not in breach of this Lease; however, the rent amount for the Irrigation Shares after January 1, 2020 shall be determined in the sole and absolute discretion of [the District].

A footnote emphasizes that "a lessee that holds a right of first refusal on January 1, 2020 may continue to lease those same Irrigation Shares on a perpetual basis provided that lessee pays the annual rent as determined by [the District] at that time in [the District]'s sole and absolute discretion." The lease also provides that "[i]n the event Lessee elects not to exercise the right to lease the Irrigation Shares for any subsequent year, Lessee shall have no further right to lease the Irrigation Shares on the same terms as set forth in this Lease."

The relevant provisions are clear and unambiguous. Paradise Canyon's entitlement to the $250-per-share rate extinguished on January 1, 2020. Because Paradise Canyon retained its right of first refusal and had not breached the lease, Paradise Canyon had the right to continue to lease the irrigation shares at a rate set by the District. The District had "sole and absolute discretion" in determining that rate. Therefore, after January 1, 2020, the District could change Paradise Canyon's rental rate, and Paradise Canyon could decide whether to renew the lease at the new rental rate. If Paradise Canyon continued to pay the rates the District set, its lease would continue "on a perpetual basis." It follows that, starting in 2020, Paradise Canyon could pay $1,115.67 per share or forgo its rights to rent the shares altogether. Paradise Canyon's counterargument that the "right of first refusal" provision should be interpreted otherwise conflicts with the plain language of the lease and thus does not show that the provision is ambiguous because it is not a *reasonable* alternative interpretation.



*The implied covenant of good faith and fair dealing does not compel a different result*

Paradise Canyon's claim that the District violated the implied covenant of good faith and fair dealing does not militate toward a different construction. Paradise Canyon argued below that the term providing the District with discretion to set rates ought to be exercised "within the standard of good faith and fair dealing and that the SNWA Lease Rate shall not be used to establish the new Lease Rate." The trial court judgment applied the implied covenant to set a rental rate well below that which the District set in the exercise of its contractually secured discretion.

"As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." 23 *Williston on Contracts* § 63:22 (4th ed.). The covenant protects against "arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 123 Nev. 217, 226, 163 P.3d 420, 427 (2007). When one party "literally complie[s] with" a contractual term, it may breach the implied covenant of good faith and fair dealing if it nevertheless "deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991).

In exercising its discretion in rate-setting, the District literally complied with the lease, acting in accordance with its express terms. Paradise Canyon neither alleged nor showed that the District intentionally undermined the contract's intent or spirit in setting the new rate. Instead, Paradise improperly sought to use the implied covenant of good faith and fair dealing "to create obligations not contemplated by the contract," *Pasadena Live, LLC v. City of Pasadena*, 8 Cal. Rptr. 3d 233, 237 (Ct. App.

SUPREME COURT
OF
NEVADA

(O) 1947A

2004) (internal quotation marks omitted), when it insisted that the District's discretion could not reflect the rate paid by SNWA. Therefore, the implied covenant of good faith and fair dealing supplies no basis to negate the District's exercise here of the broad discretion provided to it by the lease, and the trial court erred in concluding otherwise.

*Paradise Canyon was not required to show beneficial use*

The District argues that, under the lease agreement, Paradise Canyon had to demonstrate beneficial use of the allocated water. The trial court concluded that the lease did not require Paradise Canyon to show beneficial use, to amend the lease to divest any portion of its shares with respect to beneficial use, or to provide any consent letter regarding beneficial use. Paradise Canyon argues that beneficial use must be shown by the irrigation company that held the permit to water rights, not itself as a lessee of shares to use some of that water, and that the trial court did not err in this regard. We agree with Paradise Canyon on this matter.

Water within Nevada's boundaries belongs to the public. NRS 533.025. A party holding a permit from the State Engineer to appropriate public waters must demonstrate beneficial use of the water. NRS 533.400(1). The permittee need not be the party putting the water to beneficial use. *Bacher v. Off. of State Eng'r*, 122 Nev. 1110, 1118-19, 146 P.3d 793, 799 (2006). Water rights cease if they are no longer needed for a beneficial purpose, NRS 533.045, and a portion of water rights may be canceled when a permittee needs and uses less than the amount of water appropriated. *Desert Irrigation, Ltd. v. State*, 113 Nev. 1049, 1057-58, 944 P.2d 835, 841 (1997).

Paradise Canyon is correct that the Mesquite Irrigation Company (MIC) bears the responsibility to prove beneficial use of the at-issue water. MIC received a permit from the State Engineer to use public

SUPREME COURT
OF
NEVADA

(O) 1947A

waters. As a permittee, MIC must show beneficial use to retain its water rights. The District is independent of and a shareholder in MIC, and Paradise Canyon leased shares in the water permitted to MIC from the District. The lease does not specifically mention beneficial use but provides that the water *shares* represent water *rights* MIC holds and that "the rights represented by [MIC] are subject to the regulations, terms, and conditions of [MIC]." It also provides that the place of use and precise amount of the water may be subject to amendment or regulation by MIC, the State Engineer, or other government entities. By statute, appropriated water must go to a beneficial use, and the permittee must prove beneficial use. NRS 533.400(1). Under the lease, however, Paradise Canyon need not *show* beneficial use. Indeed, the MIC Board passed a resolution directing its watermaster to file proofs of beneficial use and "request[ing] all irrigating shareholders, to the extent practical[,] call for, take delivery of, and use all of their per share allocations of water." Thus, while the water rights may be at risk of cancellation in whole or part if an end-user lessee such as Paradise Canyon fails to put the water to beneficial use—thus jeopardizing the amount of water available to the lessee in the future—the lessee is not independently responsible to *show* beneficial use. This is not to suggest that the water allocated need not be put to a beneficial use. Certainly, it must be. *Cf. Desert Irrigation*, 113 Nev. at 1059, 944 P.2d at 842 ("The concept of beneficial use is singularly the most important public policy underlying the water laws of Nevada."). Paradise Canyon simply did not owe the District a duty to prove such use.

The District misplaces its reliance on *Bacher* and *Sierra Pacific Industries*, as neither support the proposition that an end-user lessee, unlike a rights-holding permittee, must demonstrate beneficial use to a lessor. *See Bacher*, 122 Nev. at 1119, 146 P.3d at 799 (adopting the anti-

SUPREME COURT
OF
NEVADA

(O) 1947A

12

speculation doctrine, which requires a party seeking a water rights permit on behalf of a different end-user of the water to have a contractual or agency relationship with the end-user); *Sierra Pac. Indus. v. Wilson*, 135 Nev. 105, 105-06, 440 P.3d 37, 39 (2019) (considering when a permittee may sell its water rights to a third party without violating the anti-speculation doctrine that arises from the beneficial-use requirement). The District misconstrues the trial court as "wholly exempting Paradise Canyon from Nevada's beneficial use jurisprudence and the ability of the District to request proof of it." This is incorrect; on the contrary, Paradise Canyon is not exempt from beneficial use laws, and the waters used are subject to beneficial use; however, it is MIC that must prove beneficial use. For these reasons, the trial court did not err in ruling that Paradise Canyon did not need to demonstrate beneficial use.

*The trial court erred in disregarding unambiguous provisions in the lease agreement*

The trial court charged the jury with determining whether Paradise Canyon had justified expectations that rates paid by SNWA would not affect its new rate, that the rate would be set according to the local market rate in Mesquite, or that the local rate would exclude SNWA's rents paid. It further charged the jury with determining the fair rental value of the water shares, whether the District breached the lease, and what the total damages were if the District breached the lease. The unambiguous provisions of the lease answer these questions as matters of law. Paradise Canyon had no justified expectations affecting the rate-setting because any new rate would be set pursuant to the District's sole and absolute discretion. Thus, it could have no expectations that payments made by SNWA would or would not affect that rate or that the local market rate in Mesquite would control the rate. The lease clearly provides that Paradise Canyon had the

right to continue leasing at the new rate or to terminate its right to lease these water shares. Given that these provisions are clear and unambiguous, the trial court should have interpreted them rather than directing the jury to do so, and it should have given force to the clear statement that setting the rental rate was within the District's sole discretion. The jury's finding about a fair rate is therefore also ill-founded, as the District had discretion in setting the rate and did so at $1,115.67 per share. And as the jury's finding of breach of contract and its calculation of damages rest on these faulty premises, these too cannot stand.

We accordingly reverse in part and remand for proceedings consistent with this opinion. We reverse §§ 14 to 20 of the trial court judgment. While the District argues that Paradise Canyon has no perpetual right to renew the lease, the judgment's conclusion in § 13—that Paradise Canyon may renew the lease, provided it is not in breach, at the rate that the District sets—aligns with our construction in this regard, and we affirm that section. We agree with Paradise Canyon that the trial court correctly construed beneficial use and therefore affirm §§ 3 to 5 of the judgment. And as the parties have not presented argument on the subjects of §§ 1 to 2 and 6 to 12, we decline to overturn the conclusions in those portions of the judgment. *See Senjab v. Alhulaibi*, 137 Nev. 632, 633-34, 497 P.3d 618, 619 (2021) ("We will not supply an argument on a party's behalf but review only the issues the parties present."). On remand, the trial court should determine whether Paradise Canyon established disputed factual issues warranting resolution by a jury in light of the proper construction of the agreement concerning District's "sole and absolute" discretion to set the rate. "[A]ll contracts impose upon the parties an implied covenant of good faith and fair dealing," *Nelson*, 123 Nev. at 226, 163 P.3d at 427, but the implied covenant may not be used to supply additional terms to the lease or

 

to fault conduct exercised under an authority expressly provided by the lease absent conduct that intentionally interferes with the intent and spirit of the lease. While this resolution suffices to dispose of this appeal, remand could potentially result in a new jury trial, and thus we observe several other significant errors below that warrant comment to provide guidance to parties and trial courts.

*The trial court invaded the province of the jury by taking judicial notice of its own factfinding*

The District argues the trial court erred in taking judicial notice of its "Facts Established for Trial" order and that doing so undermined the fairness of the trial. The District argues that the order included disputed facts, along with prejudicial, biased, and inflammatory statements toward the District. Paradise Canyon asserts that the trial court permissibly instructed the jury on undisputed facts and the law of the case. We agree with the District's view of the order.

"We review a district court's decision to admit or exclude evidence for abuse of discretion, and we will not interfere with the district court's exercise of its discretion absent a showing of palpable abuse." *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). The Nevada Constitution "guarantees the right to have factual issues determined by a jury," and that right "extends to civil proceedings." *Zamora v. Price*, 125 Nev. 388, 392-93, 213 P.3d 490, 493 (2009) (interpreting Nev. Const. art. 1, § 3).

The trial court's 24-page order instructed the jury that its contents were undisputed facts established for trial. But many facts established in the order were subject to reasonable dispute, relating to claims to be addressed at trial. Moreover, some findings statements expressed unfair bias for Paradise Canyon. For example, the court stated

that "[i]t is also undisputed that Paradise Canyon would suffer great hardship or an unconscionable loss if the Lease were not renewed," that Paradise Canyon employs approximately 85 residents of the Virgin Valley, and that "[w]ithout access to irrigation water, the golf course will 'go brown' and may cease to exist." These statements created a sense of preference for Paradise Canyon, as "the capacity of a judge to influence or affect a jury, even subtly and indirectly, is great." *State v. Tilghman*, 895 A.2d 1207, 1216 (N.J. Super. Ct. App. Div. 2006); *see State v. Guido*, 191 A.2d 45, 54 (N.J. 1963) (reasoning that "[t]he trial judge is an imposing figure" and that "[t]o the jurors he is a symbol of experience, wisdom, and impartiality"). Further, these comments were not relevant and obscured the issues for the jury. *See Williams v. Portland Gen. Elec. Co.*, 247 P.2d 494, 500 (Or. 1952) ("Everything which is reasonably capable of confusing or misleading the jury should be avoided.").

The trial court also needlessly discussed the procedural history of the litigation, including that it "ruled in favor of Paradise Canyon on each motion," and referenced the District's counsel's involvement in settlement discussions and role in drafting the lease agreement. In referring to the District's counterclaim, the trial court termed the operative clause a "so-called" right of first refusal, casting doubt on its validity, and stated, "[a]pparently, [the District] filed these allegations of breach under a mistaken belief that Paradise Canyon was sub-leasing 'Shares' to SNWA, but at some time during discovery realized that was not true." These comments improperly disparaged the District's conduct and its counterclaim and defenses and showed favor for Paradise Canyon's case.

In addition to improperly invading the jury's factfinding role, we further conclude that the trial court erred by purporting to take judicial notice of its own factfinding. A trial court judge may take judicial notice of

SUPREME COURT
OF
NEVADA

(O) 1947A

facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, so that the fact is not subject to reasonable dispute." NRS 47.130(2)(b). One may not, however, take judicial notice of one's own factual findings. *See Sosinsky v. Grant*, 8 Cal. Rptr. 2d 552, 564 (Ct. App. 1992) ("Taking judicial notice of the truth of a judge's factual finding would appear to . . . be tantamount to taking judicial notice that the judge's factual finding must necessarily have been correct and that the judge is therefore infallible."). All considered, we conclude that the trial court abused its discretion in deeming established those contested facts that the jury should have resolved, expressing preference for one party, presenting a biased and irrelevant procedural history, and misusing judicial notice.

*The trial court abused its discretion by admitting a letter from the District's counsel to Paradise Canyon*

The District next argues that admitting a letter from its counsel to Paradise Canyon impeded a fair trial where the letter pertained to sensitive pretrial negotiations. Paradise Canyon argues that the letter was properly admitted as relevant evidence of the District's retaliatory motives and bad faith. We agree with the District's view.[2]

Paradise Canyon sought declaratory relief that it did not breach its obligations to use effluent water or establish beneficial use. The District's counsel's letter stated that the District did not "intend to prematurely terminate or sue [Paradise Canyon] for a breach of contract as to the obligation to use effluent [water] or concerning beneficial use." It

---

[2]The District also argues that the letter was an inadmissible settlement offer. *Cf.* NRS 48.105. We conclude the letter did not constitute a settlement letter because it did not offer consideration but rather sought voluntary dismissals.

SUPREME COURT
OF
NEVADA

(O) 1947A

added that the District did not consider there to be a dispute and requested that Paradise Canyon voluntarily dismiss its declaratory relief claims. When Paradise Canyon did not dismiss those claims, the District brought a counterclaim for breach despite previously stating that it had no intent to sue.

The trial court admitted the letter "as relevant evidence of [the District's] alleged retaliatory motive and bad faith enforcement of the parties' lease." This was improper. A party alleging retaliation must show that "the counterclaims are baseless, brought in bad faith, brought with a retaliatory motive and lack a reasonable basis in law and fact, or are designed to deter claimants from seeking legal redress." *See Robillard v. Opal Labs, Inc.*, 337 F. Supp. 3d 962, 972 (D. Or. 2018) (internal quotation marks omitted). Paradise Canyon failed to demonstrate any of these considerations, and they are not supported by the letter. Rather, Paradise Canyon relied on the counterclaim itself to allege retaliation.

The jury was also informed that the attorney who drafted and sent the letter was the same attorney representing the District at trial. Such evidence was not relevant and instead improperly indicated that the District's trial counsel was the same attorney who allegedly acted in a retaliatory, bad faith manner before trial—this unfairly prejudiced the District. *See United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001) (explaining that disparaging remarks about opposing counsel may cause "the jury to believe that the [opposition's] characterization of the evidence should not be trusted, and, therefore, that a finding [in favor of the opposing party] would be in conflict with the true facts of the case"). Because such evidence was irrelevant and unfairly prejudicial, the trial court abused its discretion in admitting the letter. *See* NRS 48.025(2) ("Evidence which is not relevant is not admissible."); NRS 48.035(1) ("[E]vidence is not

SUPREME COURT
OF
NEVADA

(O) 1947A

18

admissible if its probative value is substantially outweighed by the danger of unfair prejudice.").

*Paradise Canyon's prejudicial opening statement constituted misconduct*

The District argues that Paradise Canyon's opening statement was unfairly prejudicial when Paradise Canyon blamed the District's counsel for causing the dispute and referred to defense tactics as a "blitzkrieg" while displaying slides of World War II-era planes and tanks. The District did not object during the opening statement but unsuccessfully moved for a mistrial during a break shortly thereafter.

An attorney "may not make improper or inflammatory arguments that appeal solely to the emotions of the jury." *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 364, 212 P.3d 1068, 1078 (2009). We review whether an attorney's comments are misconduct de novo as a question of law, although we defer to a trial court's factual findings. *Id.* Attorney misconduct is treated as objected-to where a party objects at a break shortly after the disputed statements are made. *Cox v. Copperfield*, 138 Nev. 235, 246-47, 507 P.3d 1216, 1227 (2022). If the trial court overrules an objection to attorney misconduct and declines to admonish the jury, a new trial is warranted when an admonition regarding the misconduct likely would have affected the verdict. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 75, 319 P.3d 606, 612 (2014).

"Blitzkrieg" is commonly understood to refer to a style of warfare used by Nazi Germany at the outset of World War II. *See* Hugh Segal, *Beyond the Maginot Line*, 10 L. & Bus. Rev. Am. 335, 336 (2004) (noting the military attack that was the "Nazi blitzkrieg of 1939"); *Blitzkrieg*, Oxford English Dictionary, https://www.oed.com/dictionary/blitzkrieg_n?tab=factsheet (finding the earliest use of "blitzkrieg" in 1939) (last visited Mar. 6, 2025). The dispute in this case concerned the rate a

 

governmental entity may charge a private company to rent shares of water in a lease agreement. The metaphor is scarcely relevant to this dispute, and characterizing the District's actions as akin to a tactic created by and associated with Nazi Germany was highly improper and inflammatory. The trial court should have admonished the jury in an effort to cure Paradise Canyon's counsel's misconduct, which contributed to the unfairness of the trial. In light of the disposition in this opinion, however, we need not determine whether a new trial would be warranted on the basis of this attorney misconduct, standing alone.

*The trial procedures violated the District's right to due process*

The District argues that courtroom procedures violated its rights under the Nevada Constitution's Due Process Clause by improperly limiting the District's defense and imposing time limits only during the District's presentation of witnesses. The District points out that its case was thereby limited to 2½ days, compared to the 12 days afforded to Paradise Canyon. Paradise Canyon asserts that the District delayed the trial, in part by examining witnesses for long durations, and that the trial court put both parties on notice of the requirement to expedite their presentation of evidence. Having considered the record, we agree with the District that these procedures were patently unfair.

This court reviews de novo whether a party's due process rights were violated. *Eureka County v. Seventh Jud. Dist. Ct.*, 134 Nev. 275, 279, 417 P.3d 1121, 1124 (2018). The Nevada Constitution secures that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Nev. Const. art. 1, § 8(2). "Due process is satisfied by giving both parties a meaningful opportunity to present their case." *J.D. Constr., Inv. v. IBEX Int'l Grp., LLC*, 126 Nev. 366, 375, 240 P.3d 1033, 1040 (2010) (internal quotation marks omitted). Nevertheless, a "court may impose

Supreme Court
of
Nevada

(O) 1947A

20

reasonable time limits on a trial," *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995), and a "party is not entitled, as a matter of right, to put on every witness he may have," *Deus v. Allstate Ins.*, 15 F.3d 506, 520 (5th Cir. 1994); *see Hernandez v. Bennett-Haron*, 128 Nev. 580, 587, 287 P.3d 305, 310 (2012) (explaining that the Nevada Constitution's Due Process Clause's similarity to its federal counterpart permits this court to look to federal authority when performing due process analyses).

The trial court announced, after Paradise Canyon's case-in-chief was presented, that it would impose "strict time limitations on everyone" and that to reach a "hard deadline" to finish trial, "all evidence ha[d] to be finished by [a specific day]." The District unsuccessfully objected to these limits. We conclude that the District did not receive an opportunity to be meaningfully heard under the circumstances. The District was limited to a total of nine hours to present its case, was able to call only roughly one-third of its witnesses, and was limited to producing fewer than half of its proposed exhibits. *See Elkins v. Superior Ct.*, 163 P.3d 160, 170 (Cal. 2007) (explaining that "a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court"). Moreover, the trial court imposed time limits in the courtroom only during the District's case-in-chief. *Cf. In re Marriage of Carlsson*, 77 Cal. Rptr. 3d 305, 311 (Ct. App. 2008) (explaining that it is unacceptable to "essentially [run] the trial on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues"). Further, it does not appear the trial court acted under any preexisting court rule or established guidelines, thereby creating the appearance of an arbitrary action. *See Ingram v. Ingram*, 125 P.3d 694, 698 (Okla. Civ. App. 2005) (explaining that if time limitations are indeed needed, they "should be done according to general

guidelines so as to avoid arbitrary and surprise procedures"). The trial court judge admitted that he had not imposed time limits on a party for over 17 years but proceeded to install timers and limit the trial in a way that allocated more time to Paradise Canyon. Regardless, placing such limits on a defendant's case-in-chief but not on any of the plaintiff's case-in-chief was arbitrary and unfair. We conclude that the trial court violated the District's right to due process by unfairly limiting the District's time to present its case and imposing timers for the District alone.[3]

## CONCLUSION

The legal conflict before the trial court was not complex: a dispute regarding a contract between two parties for purposes of providing irrigation water to a golf course. The trial court, however, misinterpreted the lease agreement for these shares of water. Built on the foundation of the court's misreading of a critical provision, the court held a jury trial rife with error, after which the jury was tasked with resolving questions of law that were properly within the province of the court. Accordingly, we reverse

---

[3]The District also argues that the trial court committed instructional error by directing the jury to look beyond the express terms of the lease, to consider Paradise Canyon's justified expectations regarding the new rate, to decide a fair rate based on the local market surrounding Mesquite, and to disregard any rate paid by SNWA. Given that these determinations pertained to unambiguous contractual provisions that the trial court should have resolved as questions of law rather than directing to the jury, the trial court abused its discretion in instructing the jury on these matters at all. *MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 134 Nev. 235, 237-38, 416 P.3d 249, 253 (2018) (reviewing jury instructions for an abuse of discretion).

 

§§ 14 to 20 of the trial court's judgment as the product of these errors, affirm §§ 1 to 13, and remand for proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A