142 Nev., Advance Opinion 28

IN THE SUPREME COURT OF THE STATE OF NEVADA

JUVENILE JUSTICE PROBATION
OFFICERS ASSOCIATION,
Appellant,
vs.
CLARK COUNTY,
Respondent.

No. 89488

FILED

APR 09 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court order granting a motion to stay arbitration. Eighth Judicial District Court, Clark County; Jacob A. Reynolds, Judge.

*Affirmed.*

Clark Hill PLC and Nicholas M. Wieczorek and William D. Schuller, Las Vegas,
for Appellant.

Steven B. Wolfson, District Attorney, and Scott R. Davis and Stephanie A. Mazzei, Deputy District Attorneys, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Nevada courts recognize a strong presumption in favor of arbitration. When contracting parties agree to submit disputes—either all

26-16330

disputes or a subset of disputes—to an arbitrator, this presumption counsels our courts to give effect to the agreement. We recognize that the presumption applies even to narrow arbitration clauses unless the four corners of the clause cannot be interpreted to include the dispute at issue. In the present matter, a union member was terminated from his employment with the Clark County Department of Juvenile Justice Services. Pursuant to a collective bargaining agreement, the union requested arbitration on his behalf. The County filed a motion in the district court to stay arbitration, arguing the employee was terminated pursuant to federal regulations governing penal agencies and that such terminations are not arbitrable under the terms of the agreement. The district court granted the motion. Because we conclude the arbitration clause at issue is narrow and cannot be interpreted to cover this termination, we affirm.

## FACTS AND PROCEDURAL HISTORY

The Juvenile Justice Probation Officers Association (JJPOA) and Clark County executed a collective bargaining agreement (CBA), effective from July 1, 2023, until June 30, 2026. The CBA includes an arbitration clause nested within grievance procedures, providing that aggrieved parties may submit a grievance to arbitration if the results of the first two steps of the grievance procedures are unacceptable. These grievance procedures permit employees to dispute both the interpretation and the application of express terms of the CBA, as well as employee discipline through corrective actions. The CBA defines "corrective actions" as follows: "informal or formal actions implemented to assist an employee in overcoming a substantiated deficiency related to behavior or work performance. Informal actions shall include Documented Oral Warnings

and Admonishments. Formal actions shall include Written Reprimands, Suspensions, Administrative Leave Without Pay and Terminations."

A dispute between Clark County and JJPOA over the scope of this arbitration clause arose following the termination of Ali Heidarshahi, a former employee of the County's Department of Juvenile Justice Services (DJJS). DJJS conditionally offered Heidarshahi a promotion to supervisor. To secure the promotion, however, Heidarshahi was subject to a background check mandated by the federal Prison Rape Elimination Act (PREA) and its accompanying regulations. During the background check, it was revealed that Heidarshahi had failed to disclose instances of discipline related to suspected grooming behavior with residents while he was previously employed at a juvenile detention center in San Diego County. While employed with San Diego County, Heidarshahi was disciplined because he gave a female resident his phone number and accessed the records of female residents even though he was assigned to the male unit. A year later, he was placed under investigation for giving detention center residents new clothing and hygiene products when they were not needed and persisted in doing so after being asked to stop by his supervisor. As a result of these latter allegations, Heidarshahi resigned in lieu of termination.

After uncovering this information, Clark County reviewed Heidarshahi's application to DJJS from 2016 and learned that during his psychological review he represented that he left his employment with San Diego County due to a lack of opportunity to become a caseworker, and not that he resigned in lieu of termination and while under investigation for grooming. Clark County then terminated Heidarshahi pursuant to PREA regulations—specifically, 28 C.F.R. § 115.317(g)—finding that Heidarshahi misrepresented the circumstances of his separation from employment with

the San Diego County facility while being considered for employment with DJJS in 2016. *See id.* ("Material omissions regarding such misconduct, or the provision of materially false information, shall be grounds for termination.").

After Heidarshahi's termination, JJPOA initiated a grievance on his behalf. When the County denied the grievance, JJPOA sought to begin arbitration pursuant to the CBA. But the County filed a motion in the district court to stay the arbitration, arguing that terminations pursuant to PREA are not arbitrable under the CBA. After briefing, the district court determined that the arbitration clause applied only to corrective actions and that the County had not agreed to arbitrate terminations initiated pursuant to a statute or regulation. As a result, the district court granted the motion, and this appeal followed.

## DISCUSSION

JJPOA and the County agree that the CBA contains a valid arbitration clause. Thus, the only issue before us is whether Heidarshahi's termination falls within the scope of this clause. Where, as here, the parties do not clearly agree to delegate the issue of arbitrability to the arbitrator, our courts determine the arbitrability of a dispute. *See Principal Invs. v. Harrison*, 132 Nev. 9, 16, 366 P.3d 688, 693 (2016). We begin by assessing the scope of the arbitration clause at issue. *See SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 138 Nev. 414, 417, 510 P.3d 794, 798 (2022). We then assess whether the parties' dispute falls within the clause's scope and is thus arbitrable. *See id.* "The arbitrability of a dispute presents a question of contract construction that this court reviews de novo." *Id.*

*The scope of the CBA arbitration clause*

Preliminarily, we assess whether the arbitration clause at issue is narrow or broad in scope. "A narrow [arbitration] provision limits

arbitration to specific issues or circumstances; unlike under broad provisions, collateral issues to the subject agreement are not arbitrable under narrow provisions." *Id.* at 419, 510 P.3d at 800. We identify whether an arbitration clause is narrow by examining the clause for "[n]arrow, precise language," which "delimits arbitration to an identified subset of disputes." 1 Thomas H. Oehmke & Joan M. Bovins, *Commercial Arbitration* § 6:7 (3d ed. 2025); *see also SR Constr.*, 138 Nev. at 418, 510 P.3d at 799 (noting that a narrow arbitration clause can expressly include and exclude certain issues or types of disputes and define the arbitrator's role in adjudication).

We conclude that the arbitration clause in the parties' CBA employs such narrow and precise language. The clause limits arbitration to grievances regarding either interpretation and application of an express term of the CBA or disciplinary matters, defined within the CBA as "corrective actions." Corrective actions include a range of disciplinary actions, up to and including termination, "implemented to assist an employee in overcoming a substantiated deficiency related to behavior or work performance." Thus, in contrast to a broad arbitration clause, the arbitration clause here is narrow and limited to a defined subset of disputes: interpretation and application of the CBA and, relevantly here, corrective actions.

*Arbitrability of the termination under the narrow arbitration clause*

We now determine whether Heidarshahi's termination falls within the narrow scope of the clause. The presence of an arbitration clause in an agreement indicates a presumption that a dispute arising under the agreement is arbitrable. *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 112 Nev. 1319, 1323, 929 P.2d 954, 957 (1996); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "This

presumption applies differently based on the scope of the arbitration agreement." *SR Constr.*, 138 Nev. at 417, 510 P.3d at 798. "The presumption of arbitrability scales up or down, depending on the scope of the arbitration clause." 1 Oehmke, *supra*, § 6:5. A narrow clause "indicates a weak presumption of arbitrability." *Id.* "If the clause is *narrow*, the sole issue for the arbiter is that which falls within the four corners of the narrow clause." *Id.* at § 6:7. Nonetheless, even under a narrow arbitration provision, courts should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *SR Constr.*, 138 Nev. at 419-20, 510 P.3d at 800 (quoting *Int'l Ass'n of Firefighters, Local No. 1285*, 112 Nev. at 1324, 929 P.2d at 957).

Because terminations are listed in the range of disciplinary actions designated as grievable under the CBA, JJPOA initially argues that terminations are generally corrective actions and therefore arbitrable. The County contends that the grievance and arbitration provisions apply to a termination only when it is discipline and discipline is defined in the CBA as a corrective action. The County emphasizes that corrective actions, in turn, are narrowly defined as "informal or formal actions implemented to assist an employee in overcoming a substantiated deficiency related to behavior or work performance." The County maintains that because PREA terminations in this context are implemented for a fundamentally different purpose, they are not corrective actions and are therefore not arbitrable. In reply, JJPOA concedes that not all terminations are subject to arbitration but maintains that Heidarshahi's termination is nonetheless covered by the CBA's grievance procedures and arbitration clause.

We agree with the County's contention that only terminations that can be defined as corrective actions are arbitrable under the CBA. "Contract interpretation is a question of law," which we review de novo. *Redrock Valley Ranch, LLC v. Washoe County*, 127 Nev. 451, 460, 254 P.3d 641, 647-48 (2011). "A basic rule of contract interpretation is that '[e]very word must be given effect if at all possible.'" *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (quoting *Royal Indem. Co. v. Special Serv. Supply Co.*, 82 Nev. 148, 150, 413 P.2d 500, 502 (1966)). "Ambiguity does not arise simply because the parties dispute the interpretation of a contract but rather requires that a contract's terms can be *reasonably* interpreted multiple ways." *Virgin Valley Water Dist. v. Paradise Canyon, LLC*, 141 Nev., Adv. Op. 19, 567 P.3d 962, 969 (2025). While we usually presume that words and terms in a contract have their ordinary meaning, parties to a contract may choose how words and terms therein should be construed. *Cf. Reno Club v. Young Inv. Co.*, 64 Nev. 312, 323, 182 P.2d 1011, 1016 (1947) ("In the absence of clear *evidence of a different intention*, words must be presumed to have been used in their ordinary sense, and given the meaning usually and ordinarily attributed to them." (emphasis added)).

Here, as noted above, the CBA provides that "[d]iscipline subject to the grievance procedure is defined as an employee's written reprimand, suspension, involuntary termination from County service, or a grievable corrective action as defined in paragraph 1 of this Section." Discipline is "defined as corrective actions"; corrective actions are "defined as informal or formal actions implemented to assist an employee in overcoming a substantiated deficiency related to behavior or work performance." And formal actions include a range of actions on a progressive discipline scale: "Written Reprimands, Suspensions,

Administrative Leave Without Pay and Terminations." Consequently, a "termination" is grievable discipline—and thus arbitrable—when it is implemented in response to "a substantiated deficiency in behavior or work performance."

With this scope in mind, we now examine whether Heidarshahi's termination falls under discipline as defined by the CBA. The official purposes of PREA include "mak[ing] the prevention of prison rape a top priority in each prison system," "develop[ing] and implement[ing] national standards for the detection, prevention, reduction, and punishment of prison rape," and "increas[ing] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." Prison Rape Elimination Act of 2003, 34 U.S.C. § 30302. PREA tasks the United States Attorney General with publishing regulations "adopting national standards for the detection, prevention, reduction, and punishment of prison rape." *Id.* at § 30307(a)(1).

These regulations mandate penal agencies operating juvenile facilities to have "zero tolerance toward all forms of sexual abuse and sexual harassment." 28 C.F.R. § 115.311(a). Relevantly, 28 C.F.R. § 115.317 extensively regulates the hiring and promoting of employees who may have contact with residents in juvenile facilities. Among other things, this regulation prohibits agencies from hiring or promoting anyone who has engaged in sexual abuse, requires agencies to consider any incidents of sexual harassment in determining whether to hire or promote anyone, and requires agencies to undertake thorough background checks. *Id.* at § 115.317(a)(1), (b), (c), (e). This regulation also compels agencies to ask all applicants and employees about any such misconduct and imposes a continuing affirmative duty on employees to reveal any such misconduct.

*Id.* at § 115.317(f). And, as noted, the regulation provides that "[m]aterial omissions regarding such misconduct, or the provision of materially false information, *shall* be grounds for termination." *Id.* at § 115.317(g) (emphasis added).

Heidarshahi's termination was predicated on this regulation. Specifically, Clark County maintains it discovered that Heidarshahi misrepresented the circumstances of his separation from employment with the San Diego County facility while being considered for employment with DJJS. Clark County accordingly determined that it had grounds to terminate Heidarshahi under 28 C.F.R. § 115.317(g). Heidarshahi's termination was thus implemented pursuant to PREA regulations. Whether or not this termination was justified under PREA, it nonetheless categorically falls outside of the scope of an action "implemented to assist an employee in overcoming a substantiated deficiency related to behavior or work performance." Therefore, we conclude that the CBA's arbitration clause cannot be interpreted to cover Heidarshahi's termination. *See SR Constr.*, 138 Nev. at 419-20, 510 P.3d at 800.

*Whether Heidarshahi was properly terminated pursuant to PREA*

Finally, JJPOA argues Heidarshahi was improperly terminated under 28 C.F.R. § 115.317(g), thus refuting the County's argument that his termination is not arbitrable as a PREA termination. Our review of a district court's order on a motion to stay arbitration, "only addresses arbitrability, not the merits of the underlying dispute." *SR Constr.*, 138 Nev. at 417, 510 P.3d 798. Here, the district court's order only resolved JJPOA's motion to stay arbitration. The district court did not make findings on the merits of the underlying termination. Consequently, our review only addresses the arbitrability of Heidarshahi's termination and not whether Heidarshahi was properly terminated pursuant to PREA.

## *CONCLUSION*

When parties to a contract agree to submit their disputes to an arbitrator, the presumption in favor of arbitration counsels Nevada courts to give effect to such agreements. This presumption applies to narrow arbitration clauses unless the four corners of such a clause cannot be interpreted to include a dispute at issue. After considering these principles, we conclude that the parties executed a narrow arbitration clause and Heidarshahi's termination cannot be interpreted to fall within the clause. Accordingly, we conclude that the district court did not err in granting the motion to stay arbitration. Thus, we affirm.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A